**Betty VISSER, Plaintiff,**

v.

**Dennis TAYLOR, in his capacity as Secretary of the Kansas Department of Social and Rehabilitation Services, Defendant.**

**No. 90–2280–O.**

United States District Court,
D. Kansas.

Sept. 10, 1990.

Joel R. Hayes Jr., Topeka, Kan., Stephen M. Kirschbaum, Kansas City, Kan., for plaintiff.

Reid Stacey, Social & Rehabilitation Services, Office of General Counsel, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of plaintiff Betty Visser (hereinafter "Visser") for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiff seeks injunctive and declaratory relief against the Kansas Department of Social and Rehabilitation Services (hereinafter "SRS"). Visser contends that the refusal of defendant to provide the drug clozapine (brand name "Clozaril") to her, as a recipient of the

Medicaid Program in Kansas, is in violation of the federal statutes and regulations governing the Medicaid program. Plaintiff seeks a declaratory judgment and an injunction prohibiting SRS from continuing to deny Clozaril to her as a Medicaid recipient. For the reasons stated below, we will grant plaintiff's motion for a preliminary injunction.

## I. FINDINGS OF FACT

1. Defendant, Dennis R. Taylor (hereinafter "Taylor"), is a cabinet member of the executive branch of the state of Kansas. He serves as the Secretary of SRS, in an acting capacity, subject to the confirmation of the Kansas Legislature. The Secretary is charged with the statewide supervision and administration of the Kansas Medicaid program. He is responsible for determining the general policies relating to the Kansas Medicaid program, and for adopting rules and regulations governing the program.

2. Plaintiff qualifies for, and is receiving Medicaid benefits through SRS. Visser, a thirty-nine-year-old resident of Lawrence, Kansas, suffers from auditory and visual hallucinations, which have been nearly continuous since she was twenty-one years of age. Her hallucinations, which are of a command variety, are becoming more numerous. Command hallucinations consist of voices that instruct the individual to perform various acts. In addition, she is experiencing more visual intensity with the hallucinations. This is especially dangerous for plaintiff, because many of her hallucinations command her to commit suicide. The likelihood that Visser will act upon the hallucinations is increased by the fact that she has attempted to do so in the past.

3. Visser's primary diagnosis is schizoaffective disorder, depressed type. She is also diagnosed as suffering from hallucination disorder and hemochromatosis. Plaintiff has been treated at the University of Kansas Medical Center (hereinafter "KUMC") by Daniel F. Ward, M.D. (hereinafter "Dr. Ward"). Dr. Ward, a psychiatric resident for the Outpatient Clinic in the Department of Psychiatry, has recom-mended that plaintiff be treated with Clozaril because her schizophrenia is not being treated effectively by other medications now available. In lieu of Clozaril, Dr. Ward has treated Visser with increasing dosages of Haldol, which has become progressively ineffective and is causing increasingly severe and potentially irreversible side effects, including dystonia, tardive dyskinesia, blurred vision, and loss of muscular control.

4. Plaintiff's schizophrenia is currently resistant to treatment. She has been treated unsuccessfully with a number of drugs, including: stelazine, pimozide, thorazine, navane, inderal, atenol, trazadone, presoline, klonopin, lithium, and reserpine. She is currently being treated with propranolol, amantadine, desyrel, klonopin, tirsilate, and haldol. Plaintiff has received inpatient treatment at St. Joseph Hospital and Westview Medical Center in Wichita, Kansas, on four occasions. She has been hospitalized ten times at KUMC, and one time at North Hills.

5. Visser is losing some of her cognitive function, resulting in a loss of basic memory, and now has trouble tracking conversations. It is not clear whether this is a result of her schizophrenia or a side effect of Haldol. In addition to becoming increasingly ineffective, Haldol is causing plaintiff to suffer from other very serious neurological side effects. Visser is experiencing muscle spasms in her back as a result of dystonia and is now forced to use a walker for support as she walks. Plaintiff falls occasionally and she needs the help of others to climb stairs and get out of a bathtub.

6. Visser's physical and mental state is now deteriorating at an increasing rate. She is experiencing tardive dyskinesia as a result of her consumption of extraordinarily high dosages of Haldol. The following three factors make plaintiff more likely to develop tardive dyskinesia: (a) her longterm use of Haldol; (b) her sex, female; and (c) her diagnosis of schizophrenia. Visser will most likely recover from dystonia and tardive dyskinesia at some point in the future if she stops consuming Haldol. Her withdrawal from Haldol without the use of

clozaril would result in an unacceptable increase in the hallucinations which would ultimately lead to institutionalization or suicide.

7. Plaintiff was treated by Elkard Othmar, M.D., Ph.D., (hereinafter "Dr. Othmar"), the medical director at North Hills Hospital (hereinafter "North Hills") in Kansas City, Missouri, and by Manuel P. Pardo, M.D. (hereinafter "Dr. Pardo"), a psychiatrist and professor at KUMC, from November of 1988 to March of 1990. Dr. Pardo as well as Dr. Othmar contribute as consultants to Visser's treatment and both recommend that she receive Clozaril.

8. In the opinion of Doctors Ward, Pardo, and Othmar, Visser's condition will continue to deteriorate and she will be institutionalized within six months to a year if she does not receive Clozaril. Clozaril, according to the doctors, is the only existing drug approved by the FDA which can treat plaintiff's schizophrenia. In clinical studies, Clozaril usage has resulted in a significant improvement in 30% of the cases of treatment resistant schizophrenia when patients were given Clozaril for six weeks. When the drug was administered to patients for six months, there was significant improvement in 60% of the cases involving treatment resistant schizophrenia. Despite requests by Visser's physicians and counsel, the defendant has refused to supply Clozaril to the plaintiff, or any other Medicaid recipients in Kansas. The court finds that Visser is suffering and will continue to suffer irreparable harm unless the defendant is enjoined from refusing to cover Clozaril in the Kansas Medicaid program.

## II. CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction over SRS's proposed Medicaid disallowance under 28 U.S.C. § 1331. Section 1331 of Title 28 provides district courts with jurisdiction over actions arising under the Constitution, laws, or treaties of the United States. *See, e.g., Woodstock/Kenosha Health Center v. Schweiker*, 713 F.2d 285, 288–89 (7th Cir.1983). SRS has not challenged the court's jurisdiction.

2. Venue exists over this action pursuant to 28 U.S.C. § 1391. Plaintiff Visser resides in Lawrence, Kansas, and her claim against the Kansas Department of Social and Rehabilitation Services arose in Kansas. SRS is located in this judicial district and has not challenged venue.

3. Plaintiff's action against SRS is authorized by 28 U.S.C. §§ 2201–02, Rule 57 of the Federal Rules of Civil Procedure, and 42 U.S.C. § 1983, and arises under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. A person who is denied Medicaid benefits is not required to pursue an inadequate administrative procedure before raising federal statutory and regulatory challenges in federal court. *Curtis v. Taylor*, 648 F.2d 946, 949 (5th Cir.1980).

4. In order to be entitled to a preliminary injunction, a party must demonstrate: (a) that the movant will suffer irreparable injury unless the injunction is issued; (b) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the party or parties to be enjoined; (c) that the injunction, if issued, would not be adverse to the public interest; and (d) that there is a substantial likelihood that the movant will eventually prevail on the merits. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986) (citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980)).

5. While the burden of proof is upon the movant to establish his or her right to relief, the burden of proof on the merits at the preliminary injunctive stage is considerably less than at trial. *See Kenai Oil & Gas Inc. v. Dep't of Interior*, 671 F.2d 383, 385 (10th Cir.1982); *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964). Where a plaintiff demonstrates the above three requisites including irreparable harm outweighing any potential harm to defendant, the probability of success requirement is satisfied when plaintiff raises questions going to the merits that are so serious, substantially difficult, and doubtful as to make

them a fair ground for litigation. *Otero Sav. & Loan v. Fed. Reserve Bank*, 665 F.2d 275, 278 (10th Cir.1981). For the reasons stated below, we find that plaintiff has met all of the foregoing criteria.

6. The court is persuaded that plaintiff will suffer immediate and irreparable harm in the absence of injunctive relief. Visser suffers from schizophrenia, manifesting itself in suicidal delusions and hallucinations for which there is no effective treatment, other than Clozaril. Dr. Gilbert Honigfeid testified that recent research indicates a 60% response rate in cases of treatment resistant schizophrenia. In the absence of Clozaril, plaintiff must be treated with Haldol which is presently causing her to experience severe side effects such as dystonia, difficulty in walking, and blurred vision. Institutionalization of Visser as well as irreversible deterioration of her physical and emotional health appear inevitable if she does not receive Clozaril.

7. The balance of hardship tilts decidedly in plaintiff's favor, if she is not able to obtain Clozaril. Dr. Pardo testified that the frequency of the suicidal hallucinations associated with Visser's schizophrenia, as well as the side effects from Haldol, would increase without the drug. This deterioration could lead to more serious health problems and even death.

8. The only potential harm to the defendant is the state's share of providing Clozaril, pending the outcome of this case. Even this cost is illusory, because with the strong probability of plaintiff being hospitalized if Clozaril is made available to her, the state would be forced to spend from $150.07 to $211.67 per day. *See* K.S.A. 59–2006(b) and Vol. 8 No. 27 of the Kansas Register, July 6, 1989. The cost of Clozaril is 172.00 per week. While the federal government will contribute 57% to the cost of Clozaril, the state would bear the full expense of inpatient care.

9. We are equally convinced that the public interest dictates that injunctive relief is warranted. To jeopardize the life of Visser in order to preserve the public fisc under the circumstances of this case is clearly contrary to the public interest. *See*

*Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (interest of eligible recipient in uninterrupted receipt of public assistance coupled with state's interest in avoiding erroneous termination of payments clearly outweighs state's competing concern in preventing increase in fiscal and administrative burdens).

10. The Medicaid Program is established by Title XIX of the Social Security Act, § 1801 *et seq.*, 42 U.S.C. § 1395 *et seq.* The Social Security Act must be broadly construed so as to carry out congressional intent to provide medical expense coverage for all qualifying individuals. *Mayburg v. Secretary of Health and Human Serv.*, 740 F.2d 100, 103 (1st Cir.1984).

11. The Medicaid Program is a cooperative endeavor in which the federal government provides financial assistance to participating states to aid them in furnishing health care to persons who are unable to meet the costs of such care. 42 U.S.C. § 1396; *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). The court may order compliance with statutes and regulations governing Medicaid, as a condition of receiving federal contribution. *Robinson v. Pratt*, 497 F.Supp. 116, 122 (D.Mass.1980). Costs of the program are shared by the federal and state governments, with the federal government contributing 57%.

12. While a state is not obliged to participate in the Medicaid program, a state must operate its program in compliance with federal statutory and regulatory requirements if it elects to take part in Medicaid. 42 U.S.C. § 1396a; *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Colo. Health Care Ass'n v. Colo. Dep't of Social Serv.*, 842 F.2d 1158, 1164 (10th Cir.1988); *Miss. Hosp. Ass'n, Inc. v. Heckler*, 701 F.2d 511, 515–16 (5th Cir.1983). The state of Kansas has chosen to participate in the Medicaid program.

13. All participating states are required to cover the "categorically needy." The categorically needy are primarily those per-

sons who are receiving or are eligible for financial aid from the cash assistance programs established by the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A)(ii). Participating states may also extend coverage to the "medically needy," that is, those persons whose income makes them ineligible for cash benefits, but who otherwise qualify for the cash assistance programs under the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A)(ii). Kansas has elected to provide the more extended coverage to the "medically needy." K.A.R. 30-6-53.

14. States that participate in the Medicaid program must cover six mandatory services. 42 U.S.C. § 1396a(a)(10)(A). There are also a number of optional services which may be provided by a state. A state's discretion in providing optional services is not unbridled. *Ledet v. Fischer,* 638 F.Supp. 1288, 1291 (M.D.La.1986). A state must provide service of sufficient scope to achieve the purpose of the item in the scheme of the federal program. *Dodson v. Parham,* 427 F.Supp. 97, 110 (D.Ga. 1976).

15. One of these optional services is the furnishing of prescription drugs. 42 U.S.C. § 1396d(a)(12). Kansas has elected to provide prescription drug coverage under its Medicaid plan. K.A.R. 30-5-92. "Prescription drugs" are substances prescribed for the cure, mitigation or prevention of disease, or for health maintenance. 42 C.F.R. § 440.120(a). Prescription drugs covered by the Kansas Medicaid plan are limited to drugs which are included on a formulary listing adopted and distributed by SRS. K.A.R. 30-5-92(a)(2).

16. In October of 1989, the Federal Drug Administration (hereinafter "FDA") announced its approval for the marketing of Clozaril. Clozaril was placed in the "IA" category, indicating that it is a drug which represents a significant therapeutic advance. Since one to two percent of the recipients of this drug experience a potentially fatal side effect, the FDA's approval of Clozaril was made conditional upon a distribution scheme that included weekly white blood cell counts.

17. The standards that a state adopts for determining the extent of medical assistance must be reasonable and consistent with the objectives of Title XIX. 42 U.S.C. § 1396a(a)(17). The primary objective of Title XIX, broadly stated, is to enable each state, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396; *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977).

18. Services covered by a state Medicaid plan must be sufficient in amount, duration, and scope to reasonably achieve its purpose. 42 C.F.R. § 440.230(b). A state Medicaid agency may not arbitrarily deny or reduce the amount, duration or scope of a required service to an otherwise eligible recipient solely because of the diagnosis, type of illness or condition. 42 C.F.R. § 440.230(c); *see also Curtis v. Taylor,* 625 F.2d 645, 652-53 *modified, reh'g denied,* 648 F.2d 946 (5th Cir.1980) (state may not discriminate on basis of medical condition).

19. In reviewing the actions of a state agency administering federal Medicaid funding, a court is limited in deciding whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Friedman v. Perales,* 668 F.Supp. 216, 221 (S.D. N.Y.1987). The court is convinced at this stage of the litigation that under the circumstances shown by the record before the court, SRS has acted arbitrarily, capriciously, and in contravention of the Social Security Act in denying plaintiff Medicaid coverage for Clozaril. The evidence at this point indicates that Visser is being denied coverage on the basis of her diagnosis, type of illness, and mental condition. Clozaril is necessary for the treatment and mitigation of plaintiff's schizophrenia and it has been approved by the FDA for that specific purpose.

20. Several courts have held that a prescription drug program which is not designed to make medically necessary drugs available to eligible recipients in a speedy

and efficient manner is not sufficient in amount, duration and scope to reasonably achieve its purpose. *See, e.g., Vogel v. Perales,* 1983–2 CCH Medicare & Medicaid Guide ¶ 32,878 at 9401 (S.D.N.Y.1983); *Dodson v. Parham,* 427 F.Supp. 97, 108 (N.D.Ga.1977); *Jeneski v. Myers,* 163 Cal. App.3d 18, 209 Cal.Rptr. 178, 187 (2nd Dist. 1984), *cert. denied sub nom., Kizer v. Jeneski,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 695 (1985); *Weaver v. Reagan,* 701 F.Supp. 717 (W.D.Mo.1988); *see also Meyers by Walden v. Reagan,* 776 F.2d 241 (8th Cir.1985) (electronic speech devices); *Mitchell v. Johnston,* 701 F.2d 337 (5th Cir.1983) (dental services); *Pinneke v. Preisser,* 623 F.2d 546 (8th Cir.1980) (sex reassignment surgery); *Allen v. Mansour,* 681 F.Supp. 1232 (E.D.Mich.1986) (liver transplant); *Ledet v. Fischer,* 638 F.Supp. 1288 (M.D.La.1986) (eyeglasses); *Simpson v. Wilson,* 480 F.Supp. 97 (D.Vt.1979) (eyeglasses); *Doe v. Busbee,* 471 F.Supp. 1326 (D.Ga.1979); *Coe v. Hooker,* 406 F.Supp. 1072 (D.N.H.1976) (abortion services); *Kirk v. Dunning,* 220 Neb. 359, 370 N.W.2d 113 (1985) (periodontal services).

■ 21. The touchstone of the cases cited above is medical necessity. Federal statutes and regulations providing for medically necessary treatment are to be liberally construed in favor of the intended beneficiaries of the Medicaid program. *Aitchison v. Berger,* 404 F.Supp. 1137, 1149 (S.D.N.Y.1975), *aff'd,* 538 F.2d 307 (2d Cir.), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). In *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977), the Supreme Court stated that serious statutory questions might be presented if a state Medicaid plan did not include medically necessary treatment in its coverage. The determination of whether treatment is medically necessary, for purposes of Medicaid, is a professional judgment which must be decided and certified by the treating physician. *Rush v. Parham,* 440 F.Supp. 383, 389 (D.Ga.1977), *rev'd,* 625 F.2d 1150, 1156–57 (5th Cir. 1980). A state may not eliminate funding for medical services certified by a qualified physician as being medically necessary.

*Roe v. Casey,* 464 F.Supp. 487 (D.Pa.1978), *aff'd,* 623 F.2d 829 (3d Cir.1980).

22. In the case at bar, Dr. Pardo, a licensed psychiatrist and professor at KUMC, testified that every conventional antipsychotic drug has been administered to Visser, but she continues to experience regressing, increasingly suicidal hallucinations. He added that the psychiatric staff at the medical center has demonstrated "the greatest of clinical courage" and made its "most clinically outgoing effort ever" in attempting to treat plaintiff. According to Dr. Pardo, Visser is currently suffering serious, debilitating side effects as a result of unusually large dosages of Haldol which are necessary but becoming increasingly ineffective. In order to avoid extreme forms of tardive dyskinesia, irreversible damage from dystonia and the involuntary institutionalization of plaintiff, Dr. Pardo opined that Visser must be treated with Clozaril.

■ 23. We conclude that the defendant's refusal to cover Clozaril in its prescription drug program violates 42 C.F.R. § 440.230(c) because it is an arbitrary reduction in the scope of that service to otherwise eligible individuals, solely on the basis of their illness or condition. Approximately two-thirds of those diagnosed as having schizophrenia respond well to other drugs. Defendant's failure to cover Clozaril in effect constitutes a refusal to provide prescription drug coverage for those schizophrenics, including plaintiff, whose condition cannot be effectively treated by those other drugs.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (Doc. No. 7) prohibiting defendant from continuing to deny her Medicaid coverage of Clozaril is hereby granted. SRS is to provide for the Medicaid coverage of Clozaril for plaintiff so long as she is eligible for such assistance and the drug is prescribed by her physicians.

IT IS FURTHER ORDERED that defendant include Clozaril on its formulary list

of drugs covered by Kansas' Medicaid program.