[No. F017484. Fifth Dist. Nov. 2, 1992.]

BARI A. HOLMES, Plaintiff and Appellant, v.
KENNETH KIZER, as Director, etc., Defendant and Respondent.

COUNSEL

Nancy C. Smith for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland III, Assistant Attorney General, Dennis Eckhart and Susan A. Nelson, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

BUCKLEY, J.—Bari A. Holmes appeals from the judgment denying his petition for peremptory writ of mandate. The writ sought reversal of the denial by the director of the Department of Health Services of Medi-Cal coverage for the prescription drug, Marinol. Appellant contends the superior court's findings are not supported by substantial evidence and the denial of coverage violates federal and state law as it was impermissibly based on the nature of appellant's medical condition.

### STATEMENT OF FACTS

Appellant, a recipient of Medi-Cal benefits, suffers from nystagmus, an eye disorder which causes intermittent episodes in which his eyes rapidly oscillate (tilt upward), causing vertical double vision.

Appellant's pharmacy, Sav Mor Drugs, submitted a treatment authorization request (TAR) for Medi-Cal coverage of the prescription medication Marinol.[1] Marinol was prescribed for appellant by Dr. Bigelow, a family physician. The TAR was denied by the Department of Health Services (DHS) on August 8, 1988, on the ground that the medication was requested for an "unlabeled use."

Marinol is not included in the Medi-Cal list of contract drugs and has not been approved by the federal Food and Drug Administration (FDA) for treatment of appellant's condition. Therefore, pursuant to California Code of Regulations, title 22, section 51056.2,[2] treatment of appellant's condition with Marinol is "unlabeled" and the requirement of section 51313[3] must be met in order for Medi-Cal to cover the cost of the medication.

Appellant requested a fair hearing which was held before an administrative law judge (ALJ) on October 21, 1988. At this hearing, appellant testified that Dr. Bigelow prescribed Marinol at his request. He stated that in 1980 he "found out that by smoking a joint it would give me a period of good vision for about an hour. And so I'd been going to the medical profession since then, you know." When asked by the ALJ whether he was seeking medical assistance to "find someone to put you on [marijuana]," he responded "Yeah, right." Appellant testified that after Dr. Bigelow prescribed Marinol for him, he used it for a six-week period at his own expense. He said it shortened the duration of his episodes of nystagmus, allowing longer periods of good vision each day. He testified that no other medication has been effective in controlling his nystagmus.

In support of his claim, appellant submitted letters from Dr. Bigelow and Dr. Hoyt, a neuroopthalmologic specialist, an article written by Dr. Hoyt describing appellant's symptoms, several articles concerning the medicinal effects of marijuana, and selected excerpts from the Physician's Desk Reference.

In her proposed decision, the ALJ concluded the DHS erred in denying the TAR for Marinol and recommended the claim be granted. However, this

---

[1]Marinol is the brand name of dronabinol, the principal psychoactive substance present in cannabis sativa L. (marijuana). "For practical purposes, the non-theraputic effects of dronabinol may be considered essentially identical to those of marijuana and other centrally active cannabinoids. MARINOL is highly abusable and can produce both physical and psychological dependence." (Physician's Desk Reference (45th ed. 1991) p. 1925.)

[2]California Code of Regulations title 22, section 51056.2 states: "Unlabeled use of drugs means the use of an already marketed drug for a clinical indication not listed in the approved labeling of the drug by the U.S. Food and Drug Administration."

All section references are to title 22, California Code of Regulations unless otherwise indicated.

[3]Section 51313 requires the claimant to establish that the prescription at issue constitutes "reasonable and current prescribing practices."

proposed decision was not adopted by the director of DHS. Rather, the director issued a decision upholding the denial of the TAR on the ground that appellant did not satisfy the conditions for authorization of unlabeled use of a medication in that "[t]here is no qualifying documentation that the use of this medication for the diagnosis for which prescribed represents reasonable and current prescribing practice."

Appellant filed a petition for peremptory writ of mandate (Code Civ. Proc., § 1094.5) in the Stanislaus County Superior Court alleging both that the director's decision was not supported by the weight of the evidence and the denial of coverage violates federal and state law because he was denied coverage of medically necessary medication on the basis of his condition.

After hearing, the trial court denied the petition for writ of mandate on the basis that "the evidence does not support the inference that Marinol constitutes a medical necessity for the Petitioner" and "the Director did not act arbitrarily or capriciously in denying the TAR for failure to meet the plain language of the regulation regarding 'current prescribing practices.' "

## DISCUSSION

### I. *Were the trial court's findings supported by substantial evidence?*

Appellant contends the trial court's ruling must be reversed as its findings that Marinol was not medically necessary and the prescription thereof does not constitute reasonable and current prescribing practices for appellant's medical condition "lack substantial support in the record." As will be shown below, this argument fails as both of these factual findings have substantial support in the record before this court.

### A. *Standard of Review*

■ While a trial court exercises its independent judgment in reviewing decisions concerning the grant or denial of a TAR, the appellate court is confined to inquiring whether the trial court's findings are supported by substantial evidence. (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566].) In *Lacy*, the court writes:

"While the superior court exercises its independent judgment on the administrative evidence, California law accords the appellate court a much narrower scope of review, confining it to an inquiry whether the superior court's findings are supported by substantial evidence. [Citation.] The appellate court's review of the superior court judge's gleanings from the admin-

istrative transcript is just as circumscribed as its review of a jury verdict or judge-made finding after a conventional trial. On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court." (*Ibid.*)

While acknowledging the standard discussed above, appellant asserts that "because the facts here are undisputed, and the decision to grant or deny the writ was a question of law, this Court is not bound by the trial court's decision denying the writ." While appellant's argument has a certain surface appeal, it is overly simplistic. As the court notes in *Lacy*, "[m]any issues might with equal force be classed as questions of law or questions of fact . . . when opposing inferences may reasonably be drawn from nonconflicting evidence." (17 Cal.App.3d at p. 1134.) In such cases, the issue is to be treated as a question of fact. (*Ibid.*) Thus, in *Lacy*, the court determined that even though the facts were undisputed, because the evidence was subject to differing interpretations, if only because it was "sparse and ambiguous," the issue was to be reviewed as a question of fact. (*Id.* at p. 1135.) Moreover, cases in which the issue on appeal was treated as a matter of law often involve novel questions of statutory construction. (See, e.g., *Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122]; *Goldfarb* v. *Civil Service Com.* (1990) 225 Cal.App.3d 633, 635 [275 Cal.Rptr. 284]; *Austin* v. *Board of Retirement* (1989) 209 Cal.App.3d 1528, 1531 [258 Cal.Rptr. 106].) As the facts in this case are certainly subject to differing inferences and, in connection with the claimed medical necessity of Marinol, the evidence is actually contradictory, the issue presented in the instant case is properly treated as one of fact and is subject to the limited review discussed above. (Cf. *Lacy*, *supra*, 17 Cal.App.3d 1128.)

### B. *Medical Necessity*

 In order to qualify for Medi-Cal coverage of a medication, the beneficiary must establish that the medication is medically necessary. (*Cowan* v. *Myers* (1986) 187 Cal.App.3d 968, 980 [232 Cal.Rptr. 299].) The state has the discretion to determine which services qualify as medically necessary: "A state may place a generic limit on Medicaid services based upon a judgment as to the degree of medical necessity of those services, so long as it does not discriminate on the basis of the specific medical condition which occasions the need." (*Ibid.*)

Welfare and Institutions Code section 14059.5 provides that a service is a medical necessity only when it is "reasonable and necessary to protect life,

to prevent significant illness or significant disability, or to alleviate severe pain." This definition "represents a legislative judgment that the medical services provided be restricted to those cases where they are most needed." (*Cowan* v. *Myers, supra,* 187 Cal.App.3d at p. 980.) ■ This definition has not yet been subject to judicial interpretation; however, the evidence in the instant case is such that based upon the plain language of the statute, the trial court's finding that Marinol does not constitute a medical necessity for appellant was clearly supported by substantial evidence.

Appellant lives alone; he testified that even without Marinol he had learned to protect himself from danger by "slow[ing] down" and has "learned to accept" his limitations. He completed a bachelor of science degree in biology in 1987, subsequent to the onset of his nystagmus. He describes his daily routine as follows: "Well, I ride my bicycle, I lift weights and I watch General Hospital."

Appellant testified that during the six weeks he took Marinol, the duration of the periods during which he suffered from nystagmus shortened. However, the nystagmus was not eliminated completely and there were no fewer nystagmus episodes. He testified that prior to taking Marinol he was able to read only with the assistance of a reader. During the six-week period he took Marinol, appellant read three books unassisted. In the declaration he submitted to the ALJ, appellant declared that Marinol is "beneficial" and it allows him to "enjoy such normal activities as reading and bike riding." However, at the administrative hearing appellant testified that without Marinol, he normally rides a bicycle for local transportation. When asked at the hearing whether there were any activities other than unassisted reading he could perform only while taking Marinol, appellant was unable to specify any such activities. Appellant testified that, in his opinion, Marinol would give him "more time to read," thereby making it easier for him to reach his goal of obtaining a *second* bachelor of science degree.

Dr. Bigelow's letter states that Marinol is the only medication "that enables [appellant] to see well and function." However, Dr. Bigelow's conclusion that appellant is unable to "function" absent Marinol is directly contradicted by the testimony discussed above. Dr. Hoyt's letter does not recommend use of Marinol or state that he considers it to be a medical necessity; rather, it merely states that it appears to shorten appellant's nystagmic episodes. There is no indication in either letter that the physicians' opinions as to the beneficial results of Marinol derives from their personal observations; rather, the assertions contained therein appear to be based solely on appellant's claims regarding the effects of the medication. Appellant submitted no other evidence relating to the medical necessity of Marinol.

Appellant contends he submitted evidence demonstrating that other medications have failed to help him. He argues that this fact alone establishes that Marinol is medically necessary. We disagree. Such evidence merely establishes that appellant's condition is difficult to treat, not that Marinol, a highly potent and addictive drug, is medically necessary within the meaning of Welfare and Institutions Code section 14059.5.

Appellant's testimony clearly demonstrates that he is a functioning individual who is able to enjoy many activities without Marinol. There is no evidence in the record that Marinol is necessary to protect his life, or that it alleviates severe pain. While one could possibly interpret his testimony to support the conclusion that Marinol prevents "significant disability," it cannot be said that the evidence does not support a contrary conclusion. Appellant testified that the only difference Marinol made in his daily life was the ability to read three books without assistance during a six-week period. Thus, since all conflicts must be resolved in favor of respondent, and all legitimate inferences made to uphold the trial court's ruling, the trial court's finding that appellant did not establish the medical necessity of Marinol was not without substantial evidence in the record.[4]

### C. *Section 51313, Subdivision (c)(4)*

Appellant also contends that the trial court's finding that "the Director did not act arbitrarily or capriciously in denying the TAR for failure to meet the plain language of the regulation regarding 'current prescribing practices' " was not supported by substantial evidence. Again, we disagree. We conclude that even if Marinol was medically necessary, it would not be covered by Medi-Cal because the prescription did not meet the requirement set forth in section 51313.

Section 51313, subdivision (c)(4) limits coverage of unlabeled drugs to the following medications:

"Authorization for unlabeled use of drugs shall not be granted unless the requested unlabeled use represents reasonable and current prescribing practices. The determination of reasonable and current prescribing practices shall be based on:

"(A) Reference to current medical literature.

---

[4]Because we conclude the trial court's finding that Marinol was not medically necessary was supported by the record, appellant's argument that section 51313 conflicts with Welfare and Institutions Code section 14059.5 is rendered moot as it is premised on the assumption that Marinol is medically necessary for appellant.

"(B) Consultation with provider organizations, academic and professional specialists."

It is undisputed that appellant's condition is almost unique; however, the record fails to establish that even in such a unique situation, prescribing Marinol, for the duration and in the manner indicated, constitutes reasonable and current prescribing practice for treatment of any medical disorder. Rather, the evidence supports the conclusion that Dr. Bigelow's prescription was not within current prescribing practice for Marinol. Thus, the trial court's finding is correct.

 1. *Reference to current medical literature.*

Only one of the articles submitted by appellant actually refers to the condition from which he suffers and this article is merely a description of appellant's symptoms written by Dr. Hoyt. The article never mentions marijuana nor does it refer to the possible efficacy or desirability of treatment with this drug or a derivative thereof. Thus, it does not aid in the determination of whether Marinol constitutes reasonable and current prescribing practice for the treatment of nystagmus. The remainder of the articles submitted by appellant concern the health effects of marijuana. While they support the assertion that marijuana may have certain health benefits for the control of the nausea associated with cancer chemotherapy treatment and for glaucoma, these articles do not refer to treatment of any other ocular conditions with marijuana. For example, in the article entitled *Health Aspects of Cannabis* (Hollister, Pharmacological Reviews (1986) vol. 38, No. 1, p. 1), the author lists the many therapeutic uses for which cannabis has been considered, namely: antiemetic for patients in cancer chemotherapy, glaucoma, analgesia, muscle relaxant, anticonvulsant, bronchial asthma, insomnia, hypertension, abstinence syndromes due to central nervous system depressants, antineoplastic activity, antimicrobial action, migraine, appetite stimulant and alcoholism. No ocular disorder or disease other than glaucoma is on this list. Moreover, there is absolutely no evidence in the record supporting any connection between the treatment of glaucoma and treatment of conditions even remotely similar to nystagmus.

In addition, the excerpt entitled *Intravenous Administration of Cannabinoids and Intraocular Pressure* (Perez-Reyes et al., Pharmacology of Marijuana (1976) pp. 829-832), concludes that because of the "intense psychological and cardiovascular effects" of marijuana, other cannabinoids would be "more appropriate therapeutic agents." (At p. 829.) The Physician's Desk Reference indicates that Marinol is to be used only for a few days and that patients using Marinol must be closely supervised because of "disturbing

psychotomimetic reactions." (*Ibid.*) The reference also warns that Marinol is "highly abusable and can produce both physical and psychological dependence." (Physician's Desk Reference, *supra*, at p. 1925.) This certainly supports the inference that even if Marinol has certain benefits for appellant, the risks associated with the medication are of such magnitude that use of the drug for any condition other than that for which it has been approved by the FDA is contraindicated. Thus, the articles submitted by appellant, while interesting, do not establish that Marinol constitutes reasonable and current prescribing practice for treatment of nystagmus or related conditions; rather, they support the trial court's contrary determination.

### 2. *Opinion of academic and professional specialists.*

Appellant contends the letters of Drs. Bigelow and Hoyt support the conclusion that prescribing Marinol is a reasonable and current prescribing practice. Dr. Bigelow is not an ocular specialist and therefore, technically his letter may not be considered in connection with section 51313, subdivision (c)(4). However, even interpreting the provision broadly so as to permit consideration of Dr. Bigelow's letter, it is clear that this letter does not support the conclusion that, as prescribed, prescribing Marinol constitutes reasonable and current prescribing practice for ocular disorders. While Dr. Bigelow opines that Marinol is the only drug which seems to help appellant, he writes that "I have been reluctant to use this medication because of its habit-forming potential." Despite this misgiving, Dr. Bigelow writes that "we should give it an adequate trial before concluding that the abuse potential is worse than the disease." There is no indication in this letter that the prescription represents current prescribing practice, just that Dr. Bigelow feels Marinol should be given an "adequate trial." Moreover, the weight to be given to this letter is also diminished by his recommendation that Marinol be used for six to twelve months. The Physician's Desk Reference recommends limitation of Marinol to a few days of use "under circumstances that permit close supervision of the patient by a responsible individual." There is no indication that appellant would be supervised or monitored for adverse side effects or addiction during the extended "trial period." Dr. Bigelow's letter does not explain why he determined that such substantial deviation from the recommended duration of use was appropriate. Dr. Bigelow's letter was also inaccurate in that it stated that appellant could not function absent the Marinol; appellant testified that this was not so. Thus, because of his apparent lack of expertise in treating ocular disorders, his factual inaccuracy concerning appellant's ability to function without Marinol and his deviation, without explanation, from the recommended duration of use, Dr. Bigelow's letter is entitled to little weight.

Unlike Dr. Bigelow, Dr. Hoyt is a specialist in neuroopthalmology and his opinion as to proper treatment of ocular disorders is certainly entitled to

significant weight. However, his letter does not state, either directly or by inference, that prescribing Marinol constitutes current prescribing practice for conditions such as nystagmus. In fact, Dr. Hoyt even stops short of recommending Marinol for appellant. His letter merely states that the Marinol shortens but does not eliminate appellant's nystagmic episodes and that he has no experience with treatment of a case similar to appellant's. There is no indication in this letter that his conclusion that Marinol shortens the nystagmic episodes is based on any information other than statements made to him by appellant. Moreover, there is no indication that Dr. Hoyt thinks prescribing Marinol constitutes current prescribing practice in situations such as appellant's or that he consulted with other physicians in order to determine whether they consider Marinol to be appropriate for appellant's condition. Dr. Hoyt's letter also does not address the crucial factual issue of whether Dr. Bigelow's determination to prescribe Marinol for six to twelve months of unsupervised use is within current prescribing practice.

Finally, it is worthy of consideration that appellant testified that he has been attempting to obtain a prescription for marijuana since 1980. It was appellant who went to Dr. Bigelow and asked for a prescription for Marinol. Dr. Hoyt's article discussing appellant was published in May of 1982 and appellant testified he has seen Dr. Hoyt on a yearly basis since that time. Not only is there no indication in Dr. Hoyt's article that marijuana or a derivative thereof could be a possible treatment for appellant's condition, but Marinol, available since 1987, was apparently never prescribed or even considered by Dr. Hoyt until his declaration in 1988 that Marinol is "helpful" to appellant.

The record contains no other documentary or testimonial evidence relevant to this issue. As demonstrated above, the articles submitted and the letters of Dr. Bigelow and Dr. Hoyt do not support the conclusion that the unsupervised use of Marinol for a six- to twelve-month period constitutes reasonable and current prescribing practice for treatment of ocular conditions such as nystagmus. While appellant's medical condition is apparently unique, he can point to no authority authorizing grant of an exception to section 51313 on this basis. Therefore, the trial court did not err in finding that despite appellant's "factually compelling" situation, the director did not act arbitrarily or capriciously in denying the TAR for failure to meet the requirements of section 51313, subdivision (c)(4).

### D. *Analogy to Marijuana Rescheduling*

■ Appellant contends the instant case is analogous to the United States Department of Justice, Drug Enforcement Administration's ruling, In The Matter of Marijuana Rescheduling Petition, Docket No. 86-22 (1988), transferring the marijuana plant from schedule I to schedule II of the Controlled

Substances Act.[5] In this ruling, a Department of Justice ALJ determined that marijuana has a " 'currently accepted medical use in treatment in the United States' " for certain conditions, including hyperparathyroidism. (At p. 54.) The judge found that because hyperparathyroidism is so rare, acceptance by one doctor of marijuana satisfies the requirement that a significant majority of physicians find it helpful in treating the disease. (*Ibid.*) Appellant argues that like hyperparathyroidism, because of the uniqueness of his condition, the federal standard should be applied and Dr. Hoyt's opinion that Marinol shortened appellant's nystagmic episodes standing alone satisfies the requirement of section 51313. However, this decision is clearly distinguishable.

Medi-Cal is not required to cover all drugs which may be lawfully prescribed. (See *Cowan, supra*, 187 Cal.App.3d at p. 980.) The trial court did not find that Dr. Bigelow's prescription was improper or that Marinol was not helpful to appellant, merely that the prescription thereof did not satisfy the requirements for Medi-Cal coverage. The question is not whether Marinol may lawfully be prescribed for nystagmus but whether Medi-Cal is required to cover such a prescription. Appellant has provided no authority or cogent reasoning supporting his contention that the federal standard for legal marketing for medicinal purposes should be identical to the Medi-Cal standard for coverage. If appellant's argument was accepted and this standard adopted, all schedule II drugs would be required to be covered by Medi-Cal for any condition, regardless of whether they were approved by the FDA for treatment of the specific condition for which they were prescribed.[6] Practically speaking, the prescribing physician may always be willing to opine that the medication would be beneficial to the claimant, thus negating the utilization safeguard provided by section 51313. Therefore, the standard applied in In the Matter of Marijuana Rescheduling Petition is not applicable.

---

[5]This court has previously determined that use of unpublished federal authority is not proscribed by California Rules of Court, rule 977. (*Hillman* v. *Britton* (1980) 111 Cal.App.3d 810, 816, fn. 2 [168 Cal.Rptr. 852].)

[6]The findings required for schedule I and schedule II are as follows:

"Schedule I.—

"(A) The drug or other substance has a high potential for abuse.

"(B) The drug or other substance has no currently accepted medical use in treatment in the United States.

"(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.

"Schedule II.—

"(A) The drug or other substance has a high potential for abuse.

"(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

"(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence."

## II. *Does denial of coverage for Marinol violate "federal law" by discriminating on the basis of appellant's medical condition?*

▇ Finally, relying solely upon *Visser* v. *Taylor* (D.Kan. 1990) 756 F.Supp. 501, appellant contends denial of coverage violates "federal law." In *Visser*, a federal district court determined that denial by the State of Kansas to cover the drug Clozaril for individuals such as plaintiff Visser, who failed to respond to other treatments for schizophrenia, violated 42 Code of Federal Regulations section 440.230(c), which prohibits reduction in services solely on the basis of condition or illness. (756 F.Supp. at p. 507.) However, appellant's argument fails as *Visser* is readily distinguishable from the instant case.

Contrary to appellant's characterization, Clozaril is not "experimental." Rather, it has been approved by the Food and Drug Administration (FDA) for the treatment of schizophrenia. Moreover, clinical studies demonstrated that use of the medication resulted in a significant improvement in 60 percent of the cases of treatment-resistant schizophrenia when used for six months. (756 F.Supp. at p. 504.) Obviously, Clozaril would have constituted reasonable and current prescribing practice for treatment-resistant schizophrenics under the California standard. In contrast, Marinol has not been approved by the FDA for treatment of nystagmus or related eye disorders. There have been no studies demonstrating its effectiveness and appellant was unable to provide any objective data demonstrating its accepted use in the community for treatment of ocular disorders other than glaucoma.

Moreover, Clozaril was clearly a medical necessity for Ms. Visser. Her schizophrenia was so severe she was unable to care for herself and had been hospitalized 10 times. The medication she was taking caused devastating side effects and the court found her "physical and mental state is now deteriorating at an increasing rate." (504 F.Supp. at p. 503.) Three specialists opined that her "condition will continue to deteriorate and she will be institutionalized within six months to a year [to prevent suicide] if she does not receive Clozaril." (*Id.* at p. 504.) Here, as demonstrated in section I, subdivision B, *ante*, Marinol is not a medical necessity for appellant. He is not in immediate danger of institutionalization or death absent Marinol; without the drug he is able to live and function on his own and no evidence was presented to indicate this is likely to change in the immediate future.

Were this court to conclude that *Visser* required the State of California to cover Marinol in the instant case, it would be equivalent to concluding that the state must cover all drugs any claimant feels are helpful in treating a condition or illness from which he or she suffers, regardless of whether the

drug has been approved by the FDA or whether the medication constitutes reasonable and current prescribing practice, if the claimant is able to persuade a physician to prescribe the medication. Such an interpretation would not only be in disagreement with *Cowan, supra,* 187 Cal.App.3d 968, but would eviscerate the system of utilization review which is an intrinsic part of the California Medi-Cal system. *Visser* does not require such a sweeping change in California law. Rather, it merely stands for the proposition that when a medication has been approved by the FDA for the treatment of a certain condition, and when the medication has been prescribed by a physician for that same condition and the condition cannot effectively be treated by use of another medication, federal law requires the medication to be covered by the state program if the state participates in the prescription drug program. As the instant case does not fall within the perimeters of *Visser,* it is not controlling. Denial of coverage does not violate federal law.

DISPOSITION

The judgment is affirmed; costs are awarded respondent.

Ardaiz, Acting P. J., and Vartabedian, J., concurred.