*1342
 
 Opinion
 

 STEIN, J.
 

 Asefa Taye (Taye), doing business as Pride Home Care Medical, was a provider in the state medical program, administered by the Department of Health Services (Department). Following an audit by the State Controller, it was determined that Taye had been overpaid in the amount of $235,099 for the period from January 1, 1989, through March 31, 1990. Taye filed an administrative appeal of the audit. The administrative law judge decided the matter in favor of the Department, and that decision was adopted by the Department. Taye thereafter petitioned the superior court for an administrative writ of mandamus ordering the Department to set aside its decision. He appeals from the judgment of the superior court denying his petition.
 

 Facts
 

 We state the evidence drawing all inferences therefrom, and resolving all conflicts therein, in favor of the decision of the trial court.
 
 (Holmes
 
 v.
 
 Kizer
 
 (1992) 11 Cal.App.4th 395, 400-401 [13 Cal.Rptr.2d 746];
 
 Lacy
 
 v.
 
 California Unemployment Ins. Appeals Bd.
 
 (1971 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566].)
 

 The audit was conducted by Gregory LaPlaunt who looked at vendor and supplier invoices, canceled checks, financial returns, tax returns, bank statements, and a few patient files to determine whether Taye had been paid properly for a limited number of products. In essence, the audit subtracted the amount of product purchased by Taye during the audit period from the amount of product he billed for during the same period. Any amount billed over and above the amount purchased appeared as an overpayment.
 

 The evidence at the administrative hearing focused on the overpayments for three particular products: Philmont mattress covers, Sween Cream and Sween Peri-Wash. There was no question but that Taye had billed for a greater amount of these products than he had purchased; Taye’s primary arguments were that the overbilling was either accidental or excusable. In any event, during the audit period Taye had purchased Philmont mattress covers for approximately $3 per cover. He billed Medi-Cal, however, for Hirsch mattress covers, and was paid a little over $36 for each cover. For the same period Taye purchased Sween Cream in nine-ounce jars, but billed Medi-Cal as if the cream had been supplied in two-ounce tubes. The cost of the cream in the tubes was approximately two and one-half times the cost of the cream in the jars. Finally, Taye submitted claims for many more gallons of Peri-Wash than he supplied. Apparently, he billed for gallons of PeriWash when he had supplied only eight-ounce bottles of the product.
 

 
 *1343
 
 In assessing the amount of the overpayment LaPlaunt did not credit Taye with the cost of the Philmont mattress covers Taye had purchased instead of the Hirsch covers, nor did he credit Taye with the nine-ounce jars of Sween Cream actually supplied. He did, however, credit Taye with 746 gallons of Peri-Wash, as the amount of Peri-Wash actually purchased by Taye and presumably supplied by him to his Medi-Cal clients. In other words, Taye was credited for every described product he in fact purchased and resold, but was not credited for other products purchased and resold in place of those described, and for which he had submitted no claim. Thus, he had submitted no claims for Philmont mattress covers or nine-ounce jars of Sween Cream, and accordingly received no credit for them. He did submit claims for gallons of Peri-Wash, and received credit for such gallons of Peri-Wash as the auditor determined had been in fact supplied to Medi-Cal recipients.
 

 Discussion
 

 I.
 

 The Audit Was Not Rendered Untrustworthy by the Auditor’s Refusal to Consider Opening Inventory and Patient Files
 

 Taye’s second contention, which we will consider first, is that the audit was improperly conducted and thus was untrustworthy. Taye complains that the auditor erred by failing to consider his opening inventory. LaPlaunt explained that in conducting the audit he considered neither opening inventory nor closing inventory, presuming that they would more or less cancel one another out. Indeed, disregarding both opening and closing inventories favored Taye because the evidence was that his business grew substantially during the audit period.
 
 [1]
 
 Taye provided no evidence in support of his claim that the exclusion of this evidence in fact caused him prejudice and we, also, conclude that if anything it benefitted him.
 

 
 *1344
 
 Taye further complains that the auditor did not consider patient files. The administrative law judge considered this argument, as well as that advanced by the Department that “such records are created by the Provider alone; since they are not capable of independent verification in any reasonable, workable manner, they cannot be considered.” We, as did the superior court, find the administrative law judge’s conclusion to be correct: “The Department’s argument is persuasive. Checks, invoices, and financial record entries are capable of independent verification using normal auditing techniques. Patient records, when they are created entirely by the party being audited, are not susceptible to such documentary verification (costly and probably inconclusive patient interviews would be the only way to attempt to verify them). While there was no suggestion that this Provider had falsified patient records, the Department’s general policy against considering such self serving records as sufficient to support a Medi-Cal claim is a reasonable one, given the Department’s statutory charge to maintain the fiscal integrity of the program.”
 

 II.
 

 The Method Used for Calculating the Overpayment Was Not a
 
 “Regulation”
 

 Taye contends that the Department’s method of conducting the audit, and in particular its policy of excluding from consideration opening inventory, was a “regulation” within the meaning of the California Administrative Procedure Act. (Gov. Code, § 11340 et seq.) As such it could not be used by the Department until formally adopted as a regulation and filed with the Secretary of State. (Gov. Code, § 11347.5, subd. (a).)
 

 A threshold issue is raised by the fact that Taye did not make this argument at the administrative hearing. The Department, citing
 
 Takahashi
 
 v.
 
 Board of Education
 
 (1988) 202 Cal.App.3d 1464, 1481 [249 Cal.Rptr. 578], argues that Taye therefore is barred from raising the argument in either the superior court or on appeal. The point in
 
 Takahashi,
 
 however, was decided on principles of res judicata which do not apply here. We turn to general rules of appellate review which permit a reviewing court, in its discretion, to consider new theories when the issue posed is purely a question of law based on undisputed facts.
 
 (Fisher
 
 v.
 
 City of Berkeley,
 
 (1984) 37 Cal.3d 644, 654-655, fn. 3 [209 Cal.Rptr. 682, 693 P.2d 261];
 
 Resolution Trust Corp.
 
 v
 
 Winslow
 
 (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510].) That discretion is more likely to be exercised in favor of considering the new argument when public policy or the public interest is concerned.
 
 (Resolution Trust Corp.
 
 v.
 
 Winslow, supra, 9
 
 Cal.App.4th at p. 1810.) We here exercise our discretion in favor of considering Taye’s argument, but find that it lacks merit.
 

 
 *1345
 
 The relevant statutory provision is set forth in Government Code section 11342, subdivision (b): “ ‘Regulation’ means every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of the state agency.” The reason for requiring formal adoption of regulations, in part, is to ensure that they are written in a comprehensible manner, are authorized by statute and are consistent with other law.
 
 (Grier
 
 v.
 
 Kizer
 
 (1990) 219 Cal.App.3d 422, 431 [268 Cal.Rptr. 244].) In
 
 Grier,
 
 cited here by Taye, the court found that a challenged method of conducting an audit by extrapolating from a small, select, sample of claims submitted was in fact a regulation. The court concurred in the reasoning of the Office of Administrative Law, determining that the method was a regulation because it was a standard of general application applied in every Medi-Cal case reviewed by the Department audit teams and used to determine the amount of the overpayment.
 
 (Id.
 
 at pp. 434-435, 438, 440.)
 
 [2]
 
 The auditing method used by LaPlaunt here, in contrast, was not a standard of general application used in all Medi-Cal cases. Thus, LaPlaunt declared: “The audit procedures used to conduct the audit of Pride Home Care Medical were designed to fit the particular conditions that were encountered upon the arrival at the audit site. [][]... While all audits are performed along generally accepted audit principles, these principles are not intended to be steadfast rules from which deviation is prohibited. In the twelve years that I have been employed as an auditor for the California State Controller’s Office, I have been involved in numerous audits varying in subject and complexity. In these endeavors, I have found that the flexibility to adopt auditing principles to unique situations, including treatment of inventory, is imperative in the successful completion of an audit.” It follows that the method was not a “regulation,” and no error attended its employment.
 

 III.
 

 The Department Was Not Required to Credit Taye With Unclaimed Purchases
 

 Taye contends that the Department should have credited him with the Philmont Mattress pads and nine-ounce jars of Sween Cream actually
 
 *1346
 
 provided. The simple problem with this argument is that Taye never submitted claims for these products. Rather, he submitted claims for products he never delivered: Kirsch mattress covers and two-ounce tubes of Sween Cream. We are somewhat offended by the notion that a provider who has obtained an overpayment by submitting improper claims should be credited with such amounts as might be due if the claims had been proper. Such a procedure encourages fraud. In any event, we see no improper taking in the requirement that reimbursement be made only upon submission of a proper claim.
 

 IV.
 

 Taye Is Not Entitled to Complain That the Department Offset the Overpayment Against Later Claims
 

 Taye complains that the Department offset the overpayment against claims later submitted by him. Specifically, he argues that it was improper to offset the overpayment prior to the administrative hearing determining that there was in fact an overpayment. Taye’s argument, therefore, is that the Department wrongfully refused to pay his later claims. This is not an argument properly before the administrative law judge, the superior court, or this court. The administrative hearing was concerned with the validity of the audit itself, and not with the payment of subsequent claims. We note, further, that the instant argument was raised by Taye in an earlier appeal,
 
 Taye
 
 v.
 
 State of California,
 
 A060288 (nonpub. opn.), decided by us on January 5, 1994. Taye argued in that case that the Department was not entitled to offset the overpayment until it had conducted a hearing or otherwise had permitted Taye to contest the decision that an overpayment had occurred. We found that Taye was entitled to seek relief from the refusal of the Department to pay a claim, but that he had failed to exhaust his administrative remedies and thus could not litigate the issue in court. We see no reason to depart from our earlier conclusions, even if principles of res judicata permitted us to reconsider the matter.
 

 The judgment is affirmed.
 

 Strankman, P. J., and Newsom, J., concurred.
 

 [1]
 

 The administrative law judge explained: “In an ideal world, each product dispensed by a provider during a specified audit period would be traced back to an invoice supporting its acquisition, regardless of the date of that acquisition. However, given the impossible record keeping and auditing burden such a methodology would impose upon both the provider and the Department, the auditors made certain simplifying assumptions. One of those assumptions was that beginning inventory would be counterbalanced by closing inventory, and that by discounting both, a rough picture of the true state of affairs would be sketched. Since by the testimony of one of its own witnesses, the Provider was undergoing a period of ‘unplanned expansion’ during this audit period, this assumption should have operated in the Provider’s favor. It was likely that closing inventories were higher than beginning inventories, and the larger purchases made near the end of the audit period would have been credited against all products billed by the Provider for the period. The ‘pluses’ the Provider enjoyed as a result of recognizing purchases made near the end of the period should have outweighed the ‘minuses’ it suffered from not having its beginning inventory counted.”
 

 [2]
 

 The court may have been concerned, in part, by the difficulty of determining whether the method employed by the agency was in fact trustworthy. A Department operations research specialist had selected a sample size of 200 pages from a 9,711-page record of all claims for services. The audit results of those 200 pages were then extrapolated, leading to the conclusion that the provider had been overpaid in the amount of $654,592. The court may have felt that it would be appropriate to subject this method to the scrutiny inherent in the process of adopting formal regulations. We have no such concerns here where, as discussed above, the method employed was trustworthy and favored the provider.