[No. C051407. Third Dist. July 10, 2007.]

FAUSTO CORRALES et al., Plaintiffs and Appellants, v.
ANGELA BRADSTREET, as Labor Commissioner, etc., Defendant and
Respondent.

34

## COUNSEL

California Rural Legal Assistance, Michael M. Meuter, Melissa Barrios, Alegria De La Cruz and Cynthia L. Rice for Plaintiffs and Appellants.

Joshua Stehlik, José O. Tello and Matthew D. Goldberg for Asian Law Caucus, Inc., Asian Pacific American Legal Center of Southern California, Bet Tzedek Legal Services, Garment Worker Center, Koreatown Immigrant Workers Alliance, La Raza Centro Legal, Legal Aid Foundation of Los Angeles, The Legal Aid Society—Employment Law Center, Neighborhood Legal Services of Los Angeles County, Women's Employment Rights Clinic and Young Workers United as Amici Curiae on behalf of Plaintiffs and Appellants.

Anne P. Stevason and Anne Hipshman for Defendant and Respondent.

## OPINION

**SIMS, Acting P. J.**—Fausto Corrales and Ramiro Estrada (appellants) appeal from a judgment denying their petition for a writ of mandate (Code Civ. Proc., § 1085) and complaint for declaratory relief against Angela Bradstreet, as Labor Commissioner for the State of California (the Commissioner).[1] Appellants complain then Commissioner Donna Dell[2] (1) violated statutory duties relating to timely processing of employee claims under Labor Code section 98,[3] and (2) improperly issued a precedent decision purporting to be binding in all section 98 hearings, in circumvention of rulemaking requirements of the Administrative Procedure Act (Gov. Code, § 11340 et seq. (APA).)

The underlying substantive issue is whether payments for missed meal/rest periods ordered pursuant to section 226.7[4] constitute wages or penalties. The precedent decision characterized such payments as penalties, with the apparent result of smaller potential recoveries due to a shorter limitations period and unavailability of other statutory penalties. While this appeal was pending, the California Supreme Court issued an opinion holding section 226.7 payments are wages, not penalties. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094 [56 Cal.Rptr.3d 880, 155 P.3d 284] (*Murphy*).) We explain in our discussion, *post*, why we have decided to proceed with this appeal despite any mootness resulting from the recent filing of *Murphy*.

We shall conclude appellants show reversible error because the Commissioner's attempt to issue a binding precedent decision was an invalid circumvention of the APA's rulemaking requirements. However, we shall conclude appellants fail to show reversible error with respect to the untimely processing of claims. We shall affirm in part and reverse in part.[5]

---

[1] Other petitioners/plaintiffs are not parties to this appeal.

[2] In referring to past actions of the Commissioner in this opinion, our references to "Commissioner," "she," and "her" are to former Commissioner Dell, as opposed to current Commissioner Bradstreet.

[3] Undesignated statutory references are to the Labor Code.

[4] Section 226.7 provides: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

[5] We allowed an amicus curiae brief in support of appellants, on the issue of untimely processing, to be jointly filed by amici curiae Asian Law Caucus, Inc., Asian Pacific American Legal Center of Southern California, Bet Tzedek Legal Services, Garment Worker Center, Koreatown Immigrant Workers Alliance, La Raza Centro Legal, Legal Aid Foundation of Los Angeles, The Legal Aid Society—Employment Law Center, Neighborhood Legal Services of Los Angeles County, Women's Employment Rights Clinic, and Young Workers United.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2005, appellants and others (Alfredo Perez, Jose Reynoso, Jose Luis Pina, and Northern California Carpenters Regional Council, a labor organization suing on behalf of itself and its members (NCCRC))[6] filed in the trial court the operative pleading, a first amended petition for writ of mandate and complaint for declaratory relief. Appellants alleged they are agricultural workers who filed with the Commissioner claims for unpaid wages and waiting time penalties. (§ 98 [employee claims]; § 226.7 [employer shall pay for failure to provide employee with meal/rest period].) The Commissioner, acting for the Division of Labor Standards Enforcement (DLSE), at the direction of the Labor and Workforce Development Agency (LWDA), held these claims in abeyance as part of an effort to reverse the enforcement policy pertaining to meal/rest periods reflected in opinion letters since early 2001. The pleading alleged that NCCRC relied on these letters in advising field representatives about workers' rights. The NCCRC was concerned that if the DLSE abeyance policy was allowed to stand, hundreds of workers in the construction and building trades would suffer irremediable deprivation of their rights and remedies under the Labor Code and wage orders promulgated by the Industrial Welfare Commission (IWC).

The pleading complained the abeyance policy constituted an unlawful delay in the processing of employee claims. The pleading also complained the Commissioner issued a precedent decision which directed local labor commissioner offices to apply an interpretation of section 226.7 that would reduce recovery for employees (by characterizing the payments due under the statute as penalties rather than wages, thus triggering a shorter limitations period). The precedent decision directed local labor commissioner offices to apply that decision to all claims involving section 226.7, which will reduce or eliminate appellants' recovery by limiting it to one year prior to the date of filing, eliminating the payment of interest, and eliminating any award of penalties under another statute (§ 203).

As to appellants, the pleading alleged Corrales filed a section 226.7 claim on July 15, 2003. On October 15, 2003, the Commissioner, through the Fresno district office, determined to hold a hearing and issued a complaint for Corrales to sign. On July 28, 2004, a one-day hearing was held before a deputy labor commissioner. No order, decision, or award (ODA) issued until May 4, 2005. Estrada filed his initial claim on August 26, 2003. A determination to hold a hearing was made on November 20, 2003, but no date was set until April 27, 2005, when a hearing was set for June 20, 2005.

---

[6] The "others" are not named as appellants in the text of the notice of appeal, and the opening brief on appeal indicates "appellants" are Corrales and Estrada.

The pleading designated "WRIT OF MANDATE (C.C.P. § 1085)" as a "FIRST CAUSE OF ACTION" and was broken down into four counts. Count one, labeled, "HOLDING IN ABEYANCE LABOR CODE § 226.7 CLAIMS FOR COMPENSATION," alleged on information and belief that, as early as March 2004, the Commissioner implemented a general policy and practice of holding in abeyance any section 226.7 claims. A March 1, 2004, e-mail from then LWDA Deputy Secretary Jose Millan instructed DLSE Acting Deputy Chief Greg Rupp to hold in abeyance all matters regarding meal/rest breaks. A February 3, 2005, letter from the Commissioner to Assemblymember Paul Koretz confirmed the abeyance practice. The pleading alleged on information and belief that the Commissioner implemented this abeyance policy so that ODA's issued by the Commissioner's local offices would treat section 226.7 compensation as penalties rather than wages. The abeyance policy/practice was in effect from at least March 2004 through April 26, 2005. As a result of this policy/practice, the Commissioner was routinely violating the statutory time requirements of section 98, which required hearings to be scheduled within 90 days of the determination to hold a hearing, and which required decisions to be issued within 15 days after the hearing. As a result of the abeyance policy/practice, appellants were deprived of the timely proceeding of their administrative wage claims.

Count two, labeled, "IMPLEMENTATION OF AN UNDERGROUND REGULATION," alleged on information and belief that the Commissioner had advised the staff to follow a particular construction of section 226.7 when processing claims. On December 20, 2004, DLSE Acting Deputy Chief Greg Rupp, at the Commissioner's direction, wrote a notice to all deputy labor commissioners, advising them that a select number of prior legal opinions and constructions of various labor laws were to be removed from the DLSE Web site and were to be disregarded—including those relating to section 226.7. Rupp advised the staff of pending regulations construing section 226.7 and said these regulations represented DLSE's interpretation of the law. As alleged in the pleading, the result of this directive was to change the Commissioner's interpretation from characterizing section 226.7 compensation as wages to characterizing them as penalties. Under this construction, terminated employees who had been denied this compensation would be subjected to a one-year statute of limitations and could not recover waiting time penalties afforded under section 203 (which requires employers to pay posttermination wages as a penalty for failure to pay wages due to a discharged employee). The pleading alleged the Commissioner has thus caused to be implemented a rule of general application as to construction and application of a statute, without following the rulemaking requirements of the APA.

Count three, labeled "FAILURE TO SCHEDULE HEARINGS AND IS-SUE ORDERS, DECISIONS AND AWARDS AFTER HEARING IN A TIMELY MANNER," complained of the failure to hold hearings within 90 days after a determination to hold a hearing is made, and the failure to issue decisions within 15 days of the hearing. The Commissioner had a clear and present ministerial duty to comply with the time limits of section 98. As a direct and proximate result of the abeyance policy/practice, Corrales (and others) were deprived of the timely processing of their claims to which they are statutorily entitled.

Count four, labeled "IMPLEMENTATION OF A FURTHER UNDER-GROUND REGULATION—THE JUNE 17, 2005 'PRECEDENT DECI-SION,' " alleged that on June 17, 2005, the Commissioner issued a directive characterized as a precedent decision to all DLSE staff. The precedent decision (which was in the case of *Hartwig v. Orchard Commercial, Inc.* (Cal. Dept. of Industrial Relations, DLSE, May 11, 2005, No. 12-56901RB) (*Hartwig*)), characterized section 226.7 relief as a penalty instead of a wage, which reduced the statute of limitations from three years to one and prohibited additional penalties. The Commissioner's directive stated the precedent decision was "binding on any case before the [DLSE]'s Deputy Labor Commissioners and Hearing Officers." The pleading alleged the Commissioner lacks authority to issue precedent decisions, since section 98 hearings do not come within the APA's administrative adjudication provisions. However, the Commissioner was subject to the rulemaking provisions of the APA, and the Commissioner by issuing the precedent decision caused to be implemented a rule of general application without complying with the APA's rulemaking requirements. The Commissioner's actions violated the due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution. The pleading alleged claimants are now forced to proceed directly to court or proceed with an administrative process they will certainly have to appeal to the trial court. Thus, claimants are deprived of the speedy and informal resolution process contemplated by section 98. Claimants' individual remedy of appealing the administrative decision was ineffective, because it denied them the very rights afforded by section 98, i.e., the right to a speedy nonjudicial resolution of their claims without incurring the expense and delay of formal court action. Additionally, the Commissioner would not be party to such an appeal and would not be bound thereby.

The pleading sought a writ of mandate commanding the Commissioner to rescind policies or practices of untimely processing and to rescind the precedent decision.

The pleading designated "DECLARATORY RELIEF" as its "SECOND CAUSE OF ACTION," and alleged: "An actual controversy has arisen and now exists between the parties concerning their respective rights and duties in that Petitioners contend that the current policies and practices of the Labor Commissioner with respect to the Precedent Decision, and the untimely processing of and issuing decisions as to their administrative claims for wages are not in compliance with statutory mandates. Petitioners desire a judicial determination of their rights and a declaration as to whether the current policies, practices, and decisions of the Labor Commissioner comport with State law. Specifically, a declaration is necessary and appropriate at this time in order that Petitioners may ascertain their rights with respect to the validity or lack of validity of the Precedent Decision as well as the obligation of [the Commissioner] to process and issue decisions as to their claims in a timely manner." The pleading also alleged a controversy, in that appellants contended the current policies, practices, and decisions of the Labor Commissioner with respect to the interpretation and application of sections 98, 98.1, and 226.7, conflicted with those provisions and exceeded the scope of the Commissioner's authority. Appellants sought a judicial determination of their rights under these statutes and a declaration as to whether the Commissioner's precedent decision and construction of section 226.7 as providing for a penalty was within the scope of administrative authority and consistent with law.

The pleading sought attorney's fees and costs under Code of Civil Procedure section 1021.5.

Appellants submitted to the trial court exhibits, including the memoranda and precedent decision referenced in the pleading, and documents showing that, shortly before the Commissioner issued the precedent decision, DLSE was in the process of trying to adopt a formal regulation pursuant to the APA's rulemaking requirements which among other things would "clarify" that payment due for missed meal/rest periods under section 226.7 was considered a penalty, rather than wages. DLSE then gave notice that it had decided not to proceed with the rulemaking process.

After the trial court heard argument and allowed further briefing, the court on October 3, 2005, entered judgment denying the petition for writ of mandate and denying declaratory relief. The judgment said:

1. The Commissioner's failure to process the section 226.7 claims within the 90-day period or issue rulings within the 15-day period required by statute "was not a function of workloads or routine delays but was a conscious decision. As such, it was in violation of the law. However, the Labor Commissioner subsequently acknowledged that in a statement before a

legislative committee, changed the policy, suspended the earlier illegal policy of holding claims in abeyance. [The Commissioner's] conduct in suspending the abeyance policy would have been the same conduct that the court would have ordered had the policy not been lifted. There is no viable remedy here. The issue is moot and the writ and request for declaratory relief as to this issue is denied." The court added that appellants' generic requests for compensation for the variation in interest between penalties and wages on the section 226.7 claims held in abeyance was beyond the scope of the court's ruling at the time. Appellants' request for interest that individual claimants would accrue on money they were entitled to but did not receive as a result of the abeyance was denied because there was insufficient information upon which to fashion an order and because the individuals had other remedies available under section 98 et seq.

2. Regarding the claim based on the Commissioner's backlog in processing a large but unspecified number of wage claims within the 90-day period for a hearing and the 15-day period for a decision, the judgment said the evidence was limited. There was no identification of what type of reasonable relief the court could order, and the record was insufficient for the court to fashion a remedy. The court accordingly denied the writ and declaratory relief as to this issue.

3. Regarding the pattern of conduct and communication interpreting section 226.7 as a penalty and not a wage, the judgment said:

"The pattern of conduct and communication prior to the issuance of the precedent decision, including the 12/20/04 memo from Greg Rupp constituted an underground regulation. In particular, in the 12/20/04 memo, Rupp suspends prior rulings that the payment under 226.7 is a wage and not a penalty and identifies the proposed regulations as the current opinion of the Labor Commissioner's office.

"The precedent decision of June 17, 2005 [*Hartwig*] was not an underground regulation but a proper policy statement by the Labor Commissioner. The decision marked a point at which there was a valid exercise of authority and terminated the operative effect of the underground regulation. There is no remedy for the period of time during which the underground regulation was in effect prior to the issuance of the precedent decision. Therefore, the issue regarding the underground regulation is moot and the writ and request for declaratory relief is denied as to this issue.

"The precedent decision is within the scope of the Labor Commissioner's authority based on a finding that the provisions of Labor Code [section] 98 are subject to the [APA] which includes the provision allowing for precedent

decisions by Agencies. Government Code Section 11410.10 provides that the APA adjudicatory provisions apply if an evidentiary hearing for the determination of facts is required for the formulation and issuance of a decision. Although the Labor Commissioner has discretion to determine whether or not to engage in the adjudicatory process, once a decision is made to hold a hearing, then an evidentiary hearing must be held for the determination of fact and issuance of a decision. The reference to Code of Civil Procedure Section 1094.5 by the Law Revision Commission is not a condition precedent for application of the APA but illustrative of the character and type of hearings to be included within the APA adjudicatory provisions.

"In addition, [Government Code s]ection 11410.20 provides that the APA applies unless there is an express provision otherwise in the statute governing procedures of the agency. . . . Section 98(g) was adopted prior to the APA revisions of 1995. [Government Code s]ection 11415.20 allows for the reconciliation of existing agency procedures with the APA and makes it clear that . . . Section 98 hearings is [*sic*] the type of hearing covered by the APA.

"Alternatively, [Government Code s]ection 11410.40 provides that an Agency may adopt the APA and make it applicable to them. Although not the basis for this decision, the Labor Commissioner's December 31, 1997 memorandum announcing that effective July 1, 1997, all of the adjudicative proceeding[s] are governed by the APA constituted an adoption of the APA pursuant to [Government Code s]ection 11410.40."

4. As to whether the *Hartwig* precedent decision (*Hartwig, supra*, No. 12-56901RB) was wrong in its interpretation of section 226.7, the judgment said the individual petitioners have a de novo remedy following the section 98 process and therefore have an adequate remedy at law, and so the writ and declaratory relief they seek is not available to them. NCCRC, on the other hand, is seeking relief that is not available to it under the trial de novo process that would provide broader relief to all members of the NCCRC. NCCRC is entitled to a decision as to whether the *Hartwig* precedent decision was wrongly decided. However (said the judgment), two appellate courts were currently reviewing the same issue, their decision would be binding on the trial court, and any decision made by the trial court would be immediately stayed pending resolution of those cases, which were in their final stages. Therefore, in the interests of judicial economy, the court ordered these claims of NCCRC to be held in abeyance pending resolution of the appellate cases. The judgment stated that, if the appellate cases did not determine the dispositive issues by January 6, 2006, these proceedings would resume under an expedited schedule.

Thus, judgment was entered in favor of the Commissioner.

## DISCUSSION

### I. *Mootness*

This case involves employees who seek payment for missed meal and rest periods under section 226.7. The Commissioner sought to apply to all such claims, as a binding precedent decision, an administrative decision (*Hartwig, supra*, No. 12-56901RB) which said that section 226.7 payments constitute penalties rather than wages—resulting in a shorter limitations period and smaller recoveries.

■ In contrast to *Hartwig*'s conclusion that section 226.7 payments are penalties, the California Supreme Court, in an opinion filed April 16, 2007, while this appeal was pending, held section 226.7 payments are wages, not penalties. (*Murphy, supra*, 40 Cal.4th 1094.) *Murphy* noted in a footnote that the DLSE issued a precedent decision, *Hartwig*, interpreting the remedy as a penalty (representing a departure from an earlier DLSE opinion), but *Murphy* said DLSE's construction of a statute is not binding and in particular is not entitled to significant deference when it contradicts a prior DLSE interpretation. (*Murphy, supra*, 40 Cal.4th at p. 1105, fn. 7.) *Murphy* had no need to and did not address or decide whether the designation of *Hartwig* as a precedent decision (with binding effect) was proper.

The appellate briefs in this case noted *Murphy* was pending but agreed it would not affect this case.

Since *Murphy, supra*, 40 Cal.4th 1094, invalidates *Hartwig, supra*, No. 12-56901RB, regardless of whether it is a valid precedent decision, *Murphy* in effect renders this appeal moot with respect to the validity of the designation of *Hartwig* as a precedent decision. Nevertheless, we will decide the appeal.

■ Thus, "[a] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief. [Citation.] However, if a matter is of general public interest and is likely to recur in the future, a resolution of the issue by the court is appropriate. [Citation.] In addition, cases are not moot when they present questions that are capable of repetition, yet evade review. [Citation.]" (*Californians for Alternatives to Toxics v. Department of Pesticide Regulation* (2006) 136 Cal.App.4th 1049, 1069 [39 Cal.Rptr.3d 393].)

The "evade review" prong does not apply here, because it is unlikely that the substance of a precedent decision would be declared wrong by one court

while another court is considering whether the decision is a valid precedent decision.

Nevertheless, the matter is of general public interest and is likely to recur. In *Kidd v. State of California* (1998) 62 Cal.App.4th 386, 399–400 [72 Cal.Rptr.2d 758], we held an appeal was not rendered moot by a state board's rescission of a challenged policy, where the board reserved the option to reinstitute the policy and did not repeal the regulations allowing for use of the policy. (*Id.* at pp. 397–400.) The policy, which applied affirmative action principles in alleged contravention of merit-based civil service hiring principles, was clearly one of public interest. (*Id.* at p. 399.)

Here, the matter of DLSE invalidly designating precedent decisions in circumvention of APA rulemaking requirements, affecting employees' statutory rights, is a matter of public interest. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430 [95 Cal.Rptr.2d 57] [wage and hours laws concern not only the health and welfare of the workers themselves, but also the public health and general welfare].) The problem is also likely to recur, given the memorandum issued by the Commissioner which, as stated in this opinion, improperly relied on case law as authorization for informal adoption of APA administrative adjudication provisions regarding precedent decisions.

Additionally, none of the parties to this appeal has argued that *Murphy, supra,* 40 Cal.4th 1094, renders this appeal moot.

Accordingly, we shall proceed to decide the appeal.

## II. *Standard of Review*

"A traditional writ of mandate brought under Code of Civil Procedure section 1085 lies 'to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station.' Under this section, mandate will lie to compel performance of a clear, present, and usually ministerial duty in cases where a petitioner has a clear, present and beneficial right to performance of that duty. [Citations.] Mandamus has long been recognized as the appropriate means by which to challenge a government official's refusal to implement a duly enacted legislative measure. [Citation.] [¶] . . . ' "In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of

questions of law where the facts are undisputed. [Citation.]" [Citation.]' " (*Morris v. Harper* (2001) 94 Cal.App.4th 52, 58 [114 Cal.Rptr.2d 62].)

As to the declaratory relief cause of action, Code of Civil Procedure section 1060 states: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises . . . . He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." The trial court has discretion to determine whether an action is justiciable and whether a determination is proper under this statute, and its decision will not be disturbed on appeal unless it is clearly shown the discretion was abused. (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 892–893 [72 Cal.Rptr.2d 73].)

### III. *Section 98*

The following legal principles concerning section 98 hearings were reaffirmed in *Murphy, supra*, 40 Cal.4th 1094, 1114–1116.

■ If an employer fails to pay to an employee monies required by statute, the employee has two principal options.

"The employee may seek *judicial* relief by filing an ordinary civil action against the employer . . . . Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371) and is commonly known as the 'Berman' hearing procedure after the name of its sponsor. [Fn. omitted.]

"The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. [Fn. omitted.] In brief, in a Berman proceeding the commissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no

discovery process; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on request. (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.) Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately and enforceable as a judgment in a civil action. (§ 98.2.) [Citation.]" (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858–859 [72 Cal.Rptr.2d 687, 952 P.2d 704] (*Cuadra*).)[7] Courts have held that in an "appeal" under section 98.2, the Commissioner's decision is entitled to no weight whatsoever, and the trial de novo in superior court is " ' "truly 'a trial anew in the fullest sense.' " ' " (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 372 [121 Cal.Rptr.2d 571, 48 P.3d 1128].)

Section 98 provides in part:

"(a) The Labor Commissioner shall have the authority to investigate employee complaints.[8] The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner, including orders of the Industrial Welfare Commission, and shall determine all matters arising under his or her jurisdiction. . . . Within 30 days of the filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held, whether action will be taken in accordance with Section 98.3 [action for collection of wages], or whether no further action will be taken on the complaint. If the determination is made by the Labor Commissioner to hold a hearing, the hearing shall be held within 90 days of the date of that determination. However, the Labor Commissioner may postpone or grant additional time before setting a hearing if the Labor Commissioner finds that it would lead to an equitable and just resolution of the dispute.

"It is the intent of the Legislature that hearings held pursuant to this section be conducted in an informal setting preserving the right of the parties.[9] [¶] . . . [¶]

---

[7] (*Cuadra, supra*, 17 Cal.4th 855, was disapproved on other grounds in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

[8] No one raises section 96.7, which authorizes the Commissioner to collect wages on behalf of an employee "after investigation and upon determination that wages or monetary benefits are due and unpaid to any worker . . . ." We therefore do not consider this statute.

[9] This provision in and of itself does not necessarily render inapplicable the APA, because the APA allows for both formal and informal hearings. (Gov. Code, §§ 11500 et seq., 11445.10 et seq.) However, appellants argue Berman hearings do not meet either APA standard. The Commissioner responds that the cited differences between section 98 procedures and APA procedures are meaningless, because those APA procedures are optional. We need not address these arguments because we conclude the APA administrative adjudication provisions do not apply to section 98 at all (due to absence of a required hearing).

"(g) All hearings conducted pursuant to this chapter are governed by the division and by the rules of practice and procedure adopted by the Labor Commissioner."[10]

Before the 1976 legislation creating Berman hearings, the prior version of section 98 said that DLSE "may prosecute actions for the collection of wages, penalties, and demands of persons who, in the judgment of the Labor Commissioner are financially unable to employ counsel, in cases in which the Labor Commissioner believes such claims are valid and enforceable." (Stats. 1975, ch. 144, § 11, p. 272.)

Appellants quote from an enrolled bill report prepared by the then Labor Commissioner, which appellants submitted in the trial court and which may be considered as indicative of legislative intent (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41 [34 Cal.Rptr.3d 520]), as follows: "This [1976 legislation creating Berman hearings] should expedite the handling of disputed wage claims by the Labor Commissioner's office and should discourage obstruction and stalling tactics engaged in by some employers knowing that the only recourse available to the Labor Commissioner to enforce a valid claim is to sue in the Superior Court. That process often delays final resolution and many times when a court decision is finally rendered on a matter, the employer is no longer in business or has declared bankruptcy or has reorganized under a different name, all of which frustrates the purpose of the Labor Code protections regarding timely and complete payment of wages to California workers." (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 1522 (1975–1976 Reg. Sess.) Aug. 16, 1976.)

The Commissioner is under no duty to accept an employee's claim in the first instance, and a decision by the Commissioner not to conduct a Berman hearing would not be subject to de novo review, but once the Commissioner exercises discretion to proceed with the claim by conducting a Berman hearing, the Commissioner cannot dismiss the claim summarily. (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 948–949 [98 Cal.Rptr.2d 671, 4 P.3d 928].)

IV. *Precedent Decision*

■ It is beyond dispute that DLSE is subject to the *rulemaking* requirements (e.g., public notice and opportunity to comment) of the APA's chapter 3.5 (Gov. Code, §§ 11340–11351) and must follow those requirements if it

---

[10] Regulations governing Berman hearings have been adopted. (Cal. Code Regs., tit. 8, §§ 13500–13520.)

wants to adopt a regulation[11] of general application. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568–577 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*) [DSLE's policy for determining whether IWC wage orders applied to maritime employers was void for failure to follow APA rulemaking requirements].) The question in this case is whether section 98 hearings are subject to the *administrative adjudication* provisions of the APA's chapter 4.5 (Gov. Code, §§ 11400–11475), which do not necessarily bind all agencies subject to the APA's *rulemaking* requirements. The Commissioner here apparently sought to circumvent the APA's rulemaking requirements by designating one section 98 decision (in the *Hartwig* case) as a precedent decision. As we shall see, such a designation is statutorily authorized by Government Code section 11425.60[12] for hearings subject to the APA's administrative adjudication provisions. *If* Government Code section 11425.60 (fn. 12, *ante*) applies here, then by its own terms it precludes judicial review of the Commissioner's decision to designate *Hartwig* as a precedential decision. We shall conclude, however, that section 98 hearings are *not* subject to the APA's administrative adjudication provisions, and therefore Government Code section 11425.60 does not apply at all. Consequently, the purported designation of *Hartwig* as a binding precedent decision was invalid, requiring reversal of the judgment.[13]

Thus, the Commissioner purported to designate the *Hartwig* decision as a precedent decision under the APA, Government Code section 11425.60. However, Government Code section 11425.60 is part of chapter 4.5 of the APA (administrative adjudication), which covers Government Code sections 11400 through 11475.70. Another provision of chapter 4.5 of the APA, Government Code section 11410.10 says: "This chapter applies to a decision by an agency if, under the federal or state Constitution or a federal or state

---

[11] "Regulation" means "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.)

[12] Government Code section 11425.60 states in part: "(a) A decision may not be expressly relied on as precedent unless it is designated as a precedent decision by the agency. [¶] (b) An agency may designate as a precedent decision a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur. Designation of a decision or part of a decision as a precedent decision is not rulemaking and need not be done under Chapter 3.5 (commencing with Section 11340). An agency's designation of a decision or part of a decision, or failure to designate a decision or part of a decision, as a precedent decision is not subject to judicial review."

[13] The Commissioner does not argue that the judgment may be affirmed despite invalidity of *Hartwig* as a precedent decision on the ground that the precedent decision reflects the only legally tenable interpretation of the law. (Gov. Code, § 11340.9, subd. (f); *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336 [42 Cal.Rptr.3d 47, 132 P.3d 249].)

statute, an evidentiary hearing for determination of facts is *required* for formulation and issuance of the decision." (Italics added.)

We shall first consider whether any statute required an evidentiary hearing. We shall then consider whether constitutional concerns required an evidentiary hearing.

### A. *No Statute Required an Evidentiary Hearing*

 The Labor Code does not *require* an evidentiary hearing before the Commissioner makes a "decision" under section 98. (Gov. Code, § 11410.10.) Rather, section 98, subdivision (a), states the Commissioner "*may* provide for a hearing" (italics added) of employee claims. In addition to the option of an evidentiary hearing, section 98 gives the Commissioner alternative options of (1) deciding to file a court action against the employer without holding an administrative hearing, or (2) deciding, without an evidentiary hearing, to do nothing with the employee's claim. Thus, section 98, subdivision (a), states in part, "Within 30 days of the filing of the [employee's] complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held, whether action will be taken in accordance with Section 98.3,[14] or whether no further action will be taken on the complaint."

That an ODA issues only after a hearing does not mean a hearing is required within the meaning of Government Code section 11410.10. Section 98 does not require a hearing. The Commissioner can make a determination and decision to do nothing with the employee's claim—without a hearing (thereby leaving the employee to file a court action if he or she so chooses). (§ 98, subd. (a).) According to the Commissioner's argument in the trial court, the Commissioner's decision what to do with the employee's claim involves an initial review to see if there is a prima facie case. The Commissioner's attorney argued this was a very informal process, with no formal decision, and the Commissioner did not consider a decision to do nothing (i.e., to dismiss the employee's claim) as a "decision" within the meaning of Government Code section 11410.10. The Commissioner's counsel noted the Commissioner's decision to dismiss an employee's claim without a hearing did not constitute a rejection of the merits of the claim, and the employee could then go and file a civil lawsuit in court. The Commissioner's decision to do nothing does not necessarily reflect on the merits of an employee's claim.

---

[14] Section 98.3 provides in part: "(a) The Labor Commissioner may prosecute all actions for the collection of wages, penalties, and demands of persons who in the judgment of the Labor Commissioner are financially unable to employ counsel and the Labor Commissioner believes have claims which are valid and enforceable."

The Commissioner argues the Labor Code does require an evidentiary hearing because, although section 98 gives the Commissioner *discretion* whether to hold a hearing on an employee's claim, once the Commissioner decides to hold a hearing, the hearing *must* be held before an ODA can be issued under sections 98[15] and 98.1.[16] The Commissioner notes that under Government Code section 11410.10, the question is not whether a hearing is required for resolution of a claim, but rather whether a hearing is required for issuance of a decision. Thus, as indicated, section 11410.10 says: "This chapter applies to a decision by an agency if, under the federal or state Constitution or a federal or state statute, an evidentiary hearing for determination of facts is required for formulation and issuance of the decision." The Commissioner argues section 11410.10 "applies to a <u>decision</u> by a state agency if, under a state statute an evidentiary hearing is required. Thus, although the Labor Commissioner need not hold a hearing for every complaint filed, it is required to hold a hearing if a decision will be issued. In fact, . . . [s]ection 98[, subdivision (f) (fn. 15, *ante*),] provides that even if the defendant/employer fails to appear at the hearing or answer within the time allowed [¶] 'no default shall be taken against him or her, but the Labor Commissioner shall hear the evidence offered and shall issue an [ODA] in accordance with the evidence.' If neither party appeals the ODA, the ODA shall become 'final and enforceable as a judgment by the superior court.' [(§ 98.1; fn. 16, *ante*.)] [¶] Therefore, contrary to Appellant[s'] argument, the fact that DLSE has discretion on whether to hold a hearing does not remove . . . [s]ection 98 hearings from the purview of the APA. In order to issue a decision (ODA), an evidentiary hearing must be held. This is not only a requirement of the Labor Code but of the due process clause of the United States and California Constitutions."

Thus, in the Commissioner's view, the "decision" to which Government Code section 11410.10 refers is not the Commissioner's decision what to do with the employee's claim, but the *posthearing* decision by the hearing officer in cases where a hearing is held, because state statutes (§§ 98, subd. (f), 98.1; fns. 15, 16, *ante*) require a hearing before the hearing officer issues a decision.

We reject the Commissioner's position.

---

[15] Section 98, subdivision (f), provides: "If the defendant fails to appear or answer within the time allowed under this chapter, no default shall be taken against him or her, but the Labor Commissioner shall hear the evidence offered and shall issue an order, decision, or award in accordance with the evidence."

[16] Section 98.1 states: "(a) Within 15 days after the hearing is concluded, the Labor Commissioner shall file in the office of the division a copy of the order, decision, or award. The order, decision, or award shall include a summary of the hearing and the reasons for the decision."

■ As to statutory matters, sections 98 and 98.1 do not require a hearing before a decision within the meaning of Government Code section 11410.10 but merely reflect that a decision will follow the hearing. Under the Commissioner's interpretation, *every* administrative hearing would be covered by Government Code section 11410.10, because every hearing must necessarily be followed by a decision of some sort (else why have a hearing), and therefore every posthearing decision must necessarily be preceded by a hearing, i.e., a hearing is required for every posthearing decision. This would be an absurd result that would render superfluous most of Government Code section 11410.10 and would in effect rewrite the statute to say that chapter 4.5 (administrative adjudications) applies to a decision by an agency if a hearing is held. ■ We decline to give a statute an absurd interpretation. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].)

We conclude that, with respect to section 98, the decision in Government Code section 11410.10 (i.e., that the chapter applies to a decision if an evidentiary hearing is required for the decision) refers to the Commissioner's decision what to do with the employee's claim, not to a hearing officer's decision after a discretionary hearing is held. Since a hearing is not required before the Commissioner makes the decision what to do with the employee's claim, Government Code section 11410.10 does not apply to the Commissioner's decision under section 98. In the event a hearing is held, Government Code section 11410.10 does not apply to the hearing officer's decision, because the hearing was not *required* by Constitution or statute.

Additionally, as noted by appellants, the Law Revision Commission comments to 1995 APA amendments provide further support for the conclusion that *Government Code section 11410.10 does not apply to section 98 hearings.* Thus, the Law Revision Commission said, "because the proposed law governs only statutorily or constitutionally required hearings, it does not cover a large amount of informal adjudication in which agencies choose to provide hearings even though hearings are not legally required." (Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Revision Com. Rep. (1995) p. 86.) The 1995 Law Revision Commission Comment to Government Code section 11410.10 stated in part: "The coverage of this chapter [APA administrative adjudication provisions] is the same as coverage by the existing provision for administrative mandamus under Code of Civil Procedure Section 1094.5(a). That section applies only where an agency has issued a final decision 'as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the [agency].' . . . [¶] In many cases, statutes or the constitution call for administrative proceedings

that do not rise to the level of an evidentiary hearing as defined in this section. . . . In some cases, the agency has discretion to provide or not provide the procedure. This chapter does not apply in such cases." (25 Cal. Law Revision Com. Rep., *supra,* p. 141.)

■ Section 98 administrative hearings are *not* subject to review under Code of Civil Procedure section 1094.5. Rather, section 98.2, subdivision (a), states in part: "Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard *de novo.*" (Italics added.) Courts have held that in such a review, the Commissioner's decision is entitled to no weight whatsoever, and the trial de novo in superior court is " ' "truly 'a trial anew in the fullest sense.' " ' " (*Lolley v. Campbell, supra,* 28 Cal.4th at p. 372.) Indeed, the trial court has discretion to permit the employee to raise additional related wage claims in a section 98.2 de novo trial that were not raised in the administrative Berman hearing. (*Murphy, supra,* 40 Cal.4th 1094, 1116–1120.)

The trial court in this case said the Law Revision Commission's reference to Code of Civil Procedure section 1094.5 was not a condition precedent for application of the APA administrative adjudication provisions but illustrative of the character and type of hearings to be included within the APA adjudicatory provisions. The Commissioner on appeal argues the reference to Code of Civil Procedure section 1094.5 in the Law Revision Commission comments did not remove wage claim hearings from the purview of the APA. However, even assuming Code of Civil Procedure section 1094.5 is not a condition precedent, the unavailability of administrative mandamus review is further support for our interpretation that Government Code section 11410.10 does not include section 98 hearings.

■ We conclude, contrary to the trial court, that Government Code section 11410.10 does not apply to section 98. It follows that chapter 4.5 of the APA does not apply to section 98 procedures, and Government Code section 11425.60 (fn. 12, *ante*) does not authorize issuance of a precedent decision in a section 98 case.

The trial court gave as an alternative basis for its decision Government Code section 11410.20,[17] stating in the judgment: "In addition, [Government

---

[17] Government Code section 11410.20 provides: "Except as otherwise expressly provided by statute: [¶] (a) This chapter applies to all agencies of the state. [¶] (b) This chapter does not apply to the Legislature, the courts or judicial branch, or the Governor or office of the Governor."

Code s]ection 11410.20 provides that the APA applies unless there is an express provision otherwise in the statute governing procedures of the agency. Labor Code Section 98(g) ['All hearings conducted pursuant to this chapter are governed by the division and by the rules of practice and procedure adopted by the Labor Commissioner'] was adopted prior to the APA revisions of 1995. [Government Code s]ection 11415.20[18] allows for the reconciliation of existing agency procedures with the APA and makes it clear that . . . Section 98 hearings is [sic] the type of hearing covered by the APA."

First, we see nothing in Government Code section 11415.20 which makes it clear that section 98 hearings are covered by the APA.

Second, we agree with plaintiffs that the trial court erred insofar as it suggested Government Code section 11410.20 as an independent basis for applying APA chapter 4.5 to section 98 hearings. Such a reading of Government Code section 11410.20 would render superfluous Government Code section 11410.10. The more reasonable interpretation is to read the statutes by their plain language, i.e., Government Code section 11410.20 describes what *agencies* are subject to APA chapter 4.5, and Government Code section 11410.10 describes what *agency decisions* are subject to APA chapter 4.5. Thus, the language in Government Code section 11410.20 that "[t]his chapter applies to all agencies" does not and cannot lead to the conclusion that the chapter applies even where Government Code section 11410.10 is not satisfied, i.e., where no evidentiary hearing was required.

We conclude, contrary to the trial court, that Government Code section 11410.20 does not apply.[19]

---

[18] Government Code section 11415.20 states: "A state statute or a federal statute or regulation applicable to a particular agency or decision prevails over a conflicting or inconsistent provision of this chapter."

[19] Appellants note the same conclusion would result even if the trial court meant to refer to Government Code section 11415.10, which says (1) the governing procedure by which an agency conducts an adjudicative proceeding is determined by statutes and regulations applicable to that proceeding, (2) if no governing procedure exists, an agency may conduct adjudicative proceedings under the APA's administrative adjudication provisions, and (3) "This chapter supplements the governing procedure by which an agency conducts an adjudicative proceeding." (Gov. Code, § 11415.10, subd. (b).) We reject the Commissioner's view that this quoted language means the APA provisions apply in addition to the hearing procedures which section 98 authorizes the Commissioner to adopt. Appellants note the Legislature has expressly extended APA hearing provisions to certain agency decisions, but not to section 98 hearings.

The trial court mentioned another alternative in its judgment: "Alternatively, [Government Code s]ection 11410.40[20] provides that an Agency may adopt the APA and make it applicable to them. Although not the basis for this decision, the Labor Commissioner's December 31, 1997 memorandum announcing that effective July 1, 1997, all of the adjudicative proceeding[s] are governed by the APA constituted an adoption of the APA pursuant to [Government Code s]ection 11410.40."

We disagree with the trial court's dictum on this point. (Appellants present argument on this point in their appellate brief but fail to cite Gov. Code, § 11410.40 in their brief's table of authorities.)

Thus, Government Code section 11410.40 requires that the adoption be "by regulation, ordinance, or other appropriate action." Here, there was no regulation or ordinance adopting APA chapter 4.5, Administrative Adjudication. Instead, there was a "MEMORANDUM" from then Labor Commissioner Jose Millan to all senior deputies, hearing officers and attorneys, dated December 31, 1997. This memorandum did not constitute "other appropriate action" within the meaning of Government Code section 11410.40, because "appropriate" action in context contemplates some formal agency action such as a regulation or ordinance; it does not contemplate unilateral action by an individual commissioner in a memorandum sent to staff, hearing officers, and attorneys.

Additionally, the memorandum on its face displays its defect as a Government Code section 11410.40 vehicle. The memorandum stated:

"As you know, the courts have held that the Division's written statements of policy such as our previous Operations and Procedure Manual, Interpretive Bulletins and Management Memoranda, are invalid under the APA . . . (*Tidewater*[, *supra*,] 14 Cal.4th 557). However, the *Tidewater* court did provide that the Division [DLSE] could disseminate guidance to the public, as well as our own staff, without the necessity of following APA rulemaking procedures by various other means, including the publication of a summary of our adjudicative decisions.

"Effective July 1, 1997, all of our adjudicative proceedings (. . . § 98 hearings [and other specified hearings]) are governed by the Administrative Adjudication Act. This Act provides that a decision containing a significant legal or policy determination that is likely to recur may be designated by the

---

[20] Government Code section 11410.40 provides: "Notwithstanding any other provision of this article, by regulation, ordinance, or other appropriate action, an agency may adopt this chapter or any of its provisions for the formulation and issuance of a decision, even though the agency or decision is exempt from application of this chapter."

Division as a precedent decision. The Act further provides that precedent decisions adopted by the Division must be indexed."

The memorandum then listed procedures to be used to compile an index of precedent decisions.

Thus, the memorandum relied on *Tidewater, supra,* 14 Cal.4th 557, as authorization for an informal adoption of the APA administrative adjudication provision regarding precedent decisions. However, *Tidewater* authorized no such thing. Rather, after holding a DLSE policy void for failure to follow APA rulemaking procedures for adopting a regulation of general application (14 Cal.4th at pp. 568–571), the Supreme Court said: "Of course, interpretations that arise in the course of case-specific adjudication are not regulations, *though they may be persuasive as precedents in similar subsequent cases.* [Citations.] Similarly, agencies may provide private parties with advice letters, which are not subject to the rulemaking provisions of the APA. [Citations.] Thus, if an agency prepares a policy manual that is no more than a restatement or summary, without commentary, of the agency's prior decisions in specific cases and its prior advice letters, the agency is not adopting regulations. [Citation.] *A policy manual of this kind would of course be no more binding on the agency in subsequent agency proceedings or on the courts when reviewing agency proceedings than are the decisions and advice letters that it summarizes.*" (*Id.* at p. 571, italics added.) We note the *Tidewater* opinion issued in December 1996. Section 11425.60, authorizing designation of precedent decisions, was first enacted in 1995 (Stats. 1995, ch. 938, § 21, p. 7127), operative July 1, 1997.

Thus, *Tidewater, supra,* 14 Cal.4th 557, did not authorize DLSE to decide by memorandum of its Labor Commissioner that its decisions could be binding precedent decisions under APA chapter 4.5. *Tidewater*'s comment that an administrative decision may be *persuasive* as precedent in similar subsequent cases (*Tidewater,* at p. 571) does not help the Commissioner here, because the Commissioner designated *Hartwig* as a precedent decision in order for it to be *binding* on other cases. Thus, the Commissioner's memorandum designating *Hartwig* as a precedent decision said, "Precedent decisions are binding on any case before the Division's Deputy Labor Commissioners and Hearing Officers to the extent that they include the same legal or policy issues determined in the precedent." The problem with the Commissioner's position is that designation of a *binding* precedent has the effect of creating a regulation of general application in violation of the APA's rulemaking requirement. Of the cases cited by *Tidewater* concerning use of administrative decisions as *persuasive* precedent, none approached the circumstances of this case, where an agency designated a decision as binding in future cases and abandoned midprocess its attempt to adopt a formal regulation. (*Bendix Forest*

*Products Corp. v. Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 471 [158 Cal.Rptr. 882, 600 P.2d 1339] [agency decision was not a quasi-legislative judgment promulgating a new regulation or standard but rather a specific application of laws and existing regulations]; *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 309–310 [118 Cal.Rptr. 473, 530 P.2d 161] [agency decision was not a quasi-legislative judgment declining to promulgate a new regulation, but rather involved the interpretation and application of an existing regulation]; *Taye v. Coye* (1994) 29 Cal.App.4th 1339, 1345 [35 Cal.Rptr.2d 27] [Dept. of Health Services method of calculating overpayment in the audit of a medical provider was not a standard of general application used in all Medi-Cal cases; while all audits were performed along generally accepted audit principles, these principles were not intended to be steadfast rules from which deviation was prohibited]; *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 [285 Cal.Rptr. 515] [DLSE interpreted and applied a preexisting IWC regulation to a particular situation].) Indeed, as we have indicated, *Tidewater* held a DLSE policy void for failure to follow APA rulemaking procedures for adopting a regulation of general application. (*Aguilar*, at pp. 568–571.)

We conclude the 1997 memorandum misinterpreted *Tidewater, supra*, 14 Cal.4th 557, and was ineffective in its attempt to adopt the APA's administrative adjudication chapter pursuant to Government Code section 11410.40. We need not address appellants' argument that the memorandum was ineffective due to procedural differences between Berman hearings and APA administrative adjudications.

We accordingly conclude the Berman hearing was not required by statute.

B. *The Hearing Was Not Constitutionally Compelled*

As to constitutional matters, we requested supplemental briefing on the question whether the constitutional guarantee of due process required an administrative evidentiary hearing before the Labor Commissioner could issue the decision to impose on the employer in *Hartwig, supra*, No. 12-56901RB, the penalty for meal periods not provided. We shall explain due process is not implicated.

Thus, although we have concluded the statutes do not contain an express right to a Berman hearing, both the United States Supreme Court and the California Supreme Court "have inferred a right to a hearing when constitutional problems would otherwise arise." (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1163 [26 Cal.Rptr.2d 217, 864 P.2d 488].) Where a state law is challenged on due process grounds, we inquire (1) whether the state has deprived the claimant of a protected property

interest, and (2) whether the state's procedures comport with due process, i.e., whether the party was given notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (*Lujan v. G & G Fire Sprinklers, Inc.* (2001) 532 U.S. 189, 195 [149 L.Ed.2d 391, 398, 121 S.Ct. 1446]; *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313–314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) "When the state acts to deprive an individual of an important interest, it may not do so without affording the procedural due process protection required by the Fourteenth Amendment. [Citation.]" (*Traverso, supra,* 6 Cal.4th at p. 1162.)

The Commissioner assumes the first prong—deprivation—is met and focuses on other considerations of what process is due. However, we shall conclude the due process claim fails on the first prong.

Certainly, money is a property interest, and therefore the Commissioner's decision to impose the penalty on the employer implicates a property interest. What the Commissioner's decision does *not* do, however, is *deprive* the employer of its property interest. Unless the employer chooses to allow the Commissioner's decision to stand (in which case due process is not implicated), any deprivation comes only after a trial de novo in which the merits are decided by the trial court.

 Thus, although an unchallenged decision will be entered as a court judgment (§ 98.2, subds. (d), (e)), the employer has the ability to render the Commissioner's decision inconsequential by filing an "appeal" in the trial court (§ 98.2)[21] which effectively invalidates the administrative decision and opens up the case for a court trial (with full due process protections) in which the Commissioner's decision is entitled to no weight whatsoever. The trial court's judgment is then subject to normal appellate court review under Code of Civil Procedure section 904.1. (*Peer v. California Industries for the Blind, Inc.* (1979) 95 Cal.App.3d 945 [157 Cal.Rptr. 464].) Section 98 hearings thus differ from administrative decisions that are subject to more limited review under Code of Civil Procedure section 1094.5.

The proceedings in the trial court in a section 98.2 case have been described as follows: " 'Although denoted an "appeal," unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. (. . . § 98.2, subd. (a).) " 'A hearing de novo [under section 98.2] literally means a new hearing,' that is, a new trial." [Citation.] The decision of the commissioner is "entitled to no weight whatsoever, and the proceedings are truly 'a trial anew

---

[21] Section 98.2, subdivision (a), states in part: "Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard *de novo*." (Italics added.)

in the fullest sense.' " [Citation.] The decision of the trial court, after de novo hearing, is subject to a conventional appeal to an appropriate appellate court. [Citation.] Review is of the facts presented to the trial court, which may include entirely new evidence. [Citations.]' " (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 356–357 [127 Cal.Rptr.2d 516, 58 P.3d 367], superseded on other grounds by statute (Stats. 2003, ch. 93, § 2), citing *Post v. Palo/Haklar & Associates, supra*, 23 Cal.4th at pp. 946–948.) Under section 98.2, the employer is entitled to a new trial even if the employer declined to participate at all in the administrative hearing. (*Jones v. Basich* (1986) 176 Cal.App.3d 513, 517–518 [222 Cal.Rptr. 26].)

Since the employer has the ability to render the Commissioner's decision inconsequential, it cannot be said that the Commissioner's decision deprives the employer of a property interest. Therefore, the administrative hearing which precedes the Commissioner's decision is not compelled by due process.

Arguing to the contrary, the Commissioner cites a 1976 letter urging the Governor to sign the bill creating Berman hearings, in which Assemblyman Berman said the bill solved the problem of delay in resolving unpaid wage claims by modifying the procedures "to permit a due process hearing by the Labor Commissioner with judicial enforcement if an appeal is not made." Appellants submitted the letter to the trial court. However, the author's letter to the Governor does not constitute cognizable legislative history because the Commissioner cites nothing indicating that the author's view was made known to the Legislature as a whole before it voted on the bill. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1340–1341 [101 Cal.Rptr.2d 591].) The letter merely said, "While questions concerning the bill's constitutionality have been raised, I am satisfied, as are the supporters of the bill, that there are no constitutional problems in this area." In any event, a legislator's view about constitutionality is not binding on the judiciary, which is the final arbiter on this constitutional issue. (E.g., *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 939 [72 Cal.Rptr.2d 871, 952 P.2d 1139] [in our tripartite system of government, judiciary is final arbiter of constitutional issues].)

The Commissioner argues the administrative decision does implicate the employer's property interests, thereby implicating due process, because if the employer seeks an "appeal" (trial de novo) in the trial court, (1) the employer must post a bond (§ 98.2, subd. (b)),[22] and (2) the employer must pay its

---

[22] Section 98.2, subdivision (b), provides: "Whenever an employer files an appeal [in the trial court] pursuant to this section, the employer shall post an undertaking with the reviewing [trial] court in the amount of the order, decision, or award. The undertaking shall consist of an appeal bond issued by a licensed surety or a cash deposit with the court in the amount of the order, decision, or award. The employer shall provide written notification to the other parties

opponents' costs and attorney's fees if the employer loses the trial de novo (§ 98.2, subd. (c)).[23] We disagree with the Commissioner's position.

■■■■ As to costs and attorney's fees, section 98.2, subdivision (c), authorizes only such costs and attorney's fees as were incurred in the trial court, not in the administrative hearing. (§ 98.2, subd. (c); fn. 23, *ante*; *Sampson v. Parking Service 2000 Com., Inc.* (2004) 117 Cal.App.4th 212, 228 [11 Cal.Rptr.3d 595] [in § 98.2 trial de novo, successful employee was not entitled to recover attorney's fees incurred during administrative hearing].) Any such award, which obviously would be made by a court following trial court proceedings with full due process protections, says nothing about whether the administrative hearing implicates due process.

As to the matter of posting a bond, the Commissioner cites *Williams v. Freedomcard, Inc.* (2004) 123 Cal.App.4th 609 [20 Cal.Rptr.3d 220] (*Williams*) for the proposition that an employer's section 98.2 "appeal" to the trial court will be dismissed if the employer fails to post the bond. The Commissioner suggests the dismissal was possible without violating due process because, prior to the section 98.2 "appeal," the parties have the right to a full evidentiary hearing with a right to counsel. The Commissioner cites *Brooks v. Small Claims Court* (1973) 8 Cal.3d 661 [105 Cal.Rptr. 785, 504 P.2d 1249] (*Brooks*), which held the requirement of a bond under a different statutory scheme—to obtain a trial de novo of a small claims court decision—violated due process since it constituted a taking of property without a due process hearing with right to counsel. The Commissioner argues the bond requirement in section 98.2 does not violate due process, because the parties had a full due process hearing before the Commissioner.

However, the Commissioner's argument puts the cart before the horse by arguing that, because the bond requirement would comport with due process

---

and the Labor Commissioner of the posting of the undertaking. The undertaking shall be on the condition that, if any judgment is entered in favor of the employee, the employer shall pay the amount owed pursuant to the judgment, and if the appeal is withdrawn or dismissed without entry of judgment, the employer shall pay the amount owed pursuant to the order, decision, or award of the Labor Commissioner unless the parties have executed a settlement agreement for payment of some other amount, in which case the employer shall pay the amount that the employer is obligated to pay under the terms of the settlement agreement. If the employer fails to pay the amount owed within 10 days of entry of the judgment, dismissal, or withdrawal of the appeal, or the execution of a settlement agreement, a portion of the undertaking equal to the amount owed, or the entire undertaking if the amount owed exceeds the undertaking, is forfeited to the employee."

[23] Section 98.2, subdivision (c), provides: "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero."

only if it followed a due process hearing, the administrative hearing must have been constitutionally compelled. Here, we are not presented with a challenge to payment of the bond on due process grounds, nor does the Commissioner develop any analysis on this point. We have no need to decide whether a due process hearing is required before a bond must be posted.

Additionally, though not acknowledged by the Commissioner, we observe that the California Supreme Court has said that cases such as *Brooks, supra*, 8 Cal.3d 661, "adhered to a rather rigid and mechanical interpretation of the due process clause," whereas more recent court decisions have regarded due process as "somewhat less inflexible." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 208–209 [124 Cal.Rptr. 14, 539 P.2d 774].) A temporary deprivation of property (such as the required posting of an undertaking) does continue to raise due process concerns. (*Isbell v. County of Sonoma* (1978) 21 Cal.3d 61, 68 [145 Cal.Rptr. 368, 577 P.2d 188]; *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 811 [132 Cal.Rptr. 477, 553 P.2d 637].) However, in this appeal, where the issue is whether due process required an evidentiary hearing before issuance of the Commissioner's award, we are not called upon to, and do not need to, decide whether due process requires a hearing before the temporary deprivation of posting of a bond. We nevertheless note that the Commissioner's cited authority, *Williams, supra*, 123 Cal.App.4th 609, where the trial court dismissed the section 98.2 appeal after the employer violated a court order regarding the undertaking, said nothing about due process. Moreover, the Commissioner's supplemental brief (filed in this court on Mar. 5, 2007) fails to acknowledge that *Williams* was criticized in an opinion filed on February 7, 2006—*Progressive Concrete, Inc. v. Parker* (2006) 136 Cal.App.4th 540 [38 Cal.Rptr.3d 939] (*Progressive*) (cited by the Commissioner on a different point). *Progressive* affirmed the trial court's denial of an employee's motion to dismiss a section 98.2 appeal where the employer failed to post a bond. There, unlike *Williams*, the employee did not first move for a court order requiring the employer to post a bond as a condition of proceeding with the appeal. *Progressive* disagreed with *Williams*'s suggestion that posting the undertaking was a necessary prerequisite to an employer's right to a section 98.2 appeal. (*Progressive, supra*, 136 Cal.App.4th at p. 553.) *Progressive* observed that the trial court in *Williams* rejected the employer's motion for relief from the bond requirement, issued a court order requiring the employers to post the undertaking by a certain date, and only dismissed the case after the employers violated that court order. (*Ibid.*) *Progressive* held the undertaking required by section 98.2, subdivision (b), is directory, not mandatory or jurisdictional. (*Progressive*, at pp. 545–552.) The statute does not provide any consequence or penalty for failure to post the undertaking. (*Id.* at pp. 547, 552.) The statute does not make the administrative decision final in the event the employer fails to post the undertaking. (*Ibid.*) "The apparent purpose of the undertaking

required by section 98.2, subdivision (b) is to ensure simple and expedient enforcement of any judgment entered in an employee's favor after a de novo appeal by an employer pursuant to section 98.2." (*Progressive, supra*, at p. 548.)

*Progressive, supra*, 136 Cal.App.4th 540, did say that "if an appealing employer does not post the section 98.2, subdivision (b) undertaking, the employee possibly may be able to enforce the Commissioner's order, decision or award pending the appeal." (*Id.* at p. 548.) *Progressive* cited *Buchwald v. Katz* (1972) 8 Cal.3d 493 [105 Cal.Rptr. 368, 503 P.2d 1376], which said—with regard to labor disputes under a different provision of the Labor Code—that if the employer failed to post a bond, the employee could enforce the Commissioner's award by filing in the trial court a motion to confirm the award. *Progressive* was perplexed by an apparent inconsistency in allowing an appeal to proceed without a bond while at the same time allowing the opposing party to enforce the award by filing a motion to confirm the award. (*Progressive*, at pp. 549–550.) *Progressive* concluded the pertinent statutory language of section 98.2 rejected the possibility of *Buchwald*-type enforcement while a section 98.2 appeal was pending in the trial court. (*Progressive, supra*, 136 Cal.App.4th at pp. 550–551.) The Commissioner's decision becomes final only if the employer fails to file a section 98.2 notice of appeal in the trial court and the Commissioner's decision is filed in the trial court. (*Progressive*, at pp. 550–551.)

We conclude the constitutional guarantee of due process did not require an administrative evidentiary hearing before the Commissioner could issue the *Hartwig, supra*, No. 12-56901RB, decision to impose on the employer the penalty for meal periods not provided.

Since the administrative evidentiary hearing in *Hartwig, supra*, No. 12-56901RB, was not required by statute or by the California Constitution, the Commissioner's attempt to designate *Hartwig* as a binding precedent decision was invalid. (Gov. Code, §§ 11410.10, 11425.60.)

Accordingly, the judgment must be reversed.

V. *Untimely Processing*

Appellants also argue the Commissioner regularly and systematically violates two mandatory statutory obligations concerning timely processing of wage claims—the requirement to hold hearings on employee claims within 90 days of determining to hold a hearing (§ 98, subd. (a)), and the requirement to issue ODA's within 15 days after completion of hearings (§ 98.1). On appeal, the Commissioner agrees she is obligated to comply with section 98's

time requirements and admits failure to adhere to those time lines in some cases. She says the evidence shows a willingness to comply but an inability to do so due to inadequate staff.

Section 98, subdivision (a), states, "Within 30 days of the filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held . . . . If the determination is made by the Labor Commissioner to hold a hearing, the hearing shall be held within 90 days of the date of that . determination. However, the Labor Commissioner may postpone or grant additional time before setting a hearing if the Labor Commissioner finds that it would lead to an equitable and just resolution of the dispute." Section 98.1 requires the Labor Commissioner to file in the division office an ODA within 15 days after the hearing is concluded.

Appellants contend the Commissioner violated these mandatory time requirements without a proper postponement. In this appeal, the matter of untimely processing involves two issues: (1) the Commissioner's abeyance practice of holding in abeyance all claims for payment for missed meal/break periods and (2) the general backlog in processing claims, which the Commissioner attributes to lack of sufficient resources.

As to the first issue (abeyance), we agree with the trial court that the issue is moot, because the Commissioner abandoned the abeyance practice. Thus, this lawsuit was originally filed on April 14, 2005, seeking a writ of mandate and declaratory relief. On April 26, 2005, the Commissioner issued a memorandum to all hearing offices instructing them to process section 226.7 claims in the same manner as other claims.

Appellants argue the matter is not moot, and an actual controversy regarding the abeyance policy still exists, meriting declaratory relief. Appellants cite case law that voluntary discontinuance of an allegedly illegal practice does not strip the court of the authority or the duty to determine the validity of the charges where the challenged practice may be resumed. (E.g., *Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 929 [130 Cal.Rptr. 1, 549 P.2d 833].) Indeed, we applied the *Marin County* case in *Kidd v. State of California, supra,* 62 Cal.App.4th at pages 397 through 400, a case we decided was not moot where the state board suspended a challenged policy on the eve of trial but defended the policy, expressly reserved its right to resume the policy, and declined to repeal the regulations authorizing the policy. (*Kidd, supra,* 62 Cal.App.4th at pp. 391–392, 397–400.)

Here, appellants argue the Commissioner may resume the abeyance practice, because the Commissioner's memorandum suspending the practice did

not acknowledge the practice was illegal (though the trial court said the Commissioner did acknowledge the illegality).

However, the Commissioner now has the benefit of the trial court's view that the abeyance practice was unlawful—a determination unchallenged by the Commissioner on appeal. Moreover, the record adequately reflects that recurrence is unlikely. Thus, the Commissioner submitted a declaration, stating, "On April 12, 2005, I appeared before the California State Assembly Budget Committee in my capacity as State Labor Commissioner. [¶] . . . In response to questioning concerning holding in abeyance certain Labor Commissioner wage claims decisions regarding meal and rest breaks, I told the Committee that I would 'break the logjam within 30 days or resign my position as Labor Commissioner.' [¶] . . . On April 26, 2005, . . . I issued a Memorandum to all hearing officers and Executive Staff instructing them to process all cases involving issues related to meal and rest periods in the regular course of business."

At the beginning of the hearing in the trial court, on June 29, 2005, in deciding whether the issue of the abeyance policy was moot, the trial court said then Commissioner Dell "violated the law for four months. She didn't grant hearings when she should have to a select group of individuals with a select type of claim. [¶] I don't know what she said, whether she acknowledged the error of her ways or not, but she reversed her policy . . . ." Appellants' counsel acknowledged the abeyance policy was no longer in effect but argued the Commissioner had not acknowledged impropriety of the policy and might resume it if another "political issue" were "dropped in the Labor Commissioner's lap." The trial court asked:

"THE COURT: Is—[Commissioner's attorney], is [the Commissioner] going to violate the law again?

"[Appellants' counsel]: Let me say.

"THE COURT: Excuse me, ma'am. Why not?

"[Commissioner's attorney]: No.

"THE COURT: Why not?

"[Commissioner's attorney]: Let me back-up a little bit. The fact of the matter is that what we have before us is the abeyance policy and on the 226.7 issues, the—

"THE COURT: Has she done it in any other instance other than 226.7 that we know of?

"[Commissioner's attorney]: No, your Honor, we have—[the Commissioner] has not."

Thus, the Commissioner's attorney represented that the Commissioner would not violate the law, i.e., would not resume the abeyance policy.

Under these circumstances, we will not presume the Commissioner will resume the practice, and appellants cite no evidence supporting a conclusion that the practice may be resumed.

We conclude appellants fail to show grounds for reversal with respect to the abeyance practice.

As to the issue of the general backlog, the Commissioner's answer to the pleading stated the Commissioner "admits that there are some claims filed in Labor Commissioner offices in California which do not proceed to hearing within 90 days of the date that a determination is made to hold a hearing," and the Commissioner "admits that there are some cases where ODA's have not been issued within 15 days after holding a hearing." Appellants cite evidence of a systemwide problem of untimely processing of employee claims (which the Commissioner attributes to a lack of sufficient resources).[24]

What appellants fail to do, however, is meet their burden as appellants to show they are entitled to reversal of the judgment on this point. Appellants are Corrales and Estrada only. The pleading alleged untimely processing of both their claims, but the pleading also alleged a hearing was ultimately held and an ODA ultimately issued in Corrales's case. As to Estrada, the pleading (filed July 8, 2005) alleged a hearing date of June 20, 2005, was set for Estrada's claim. We see nothing indicating any attempt to amend or supplement the pleading to allege that the hearing did not take place or that an ODA did not issue as to Estrada. The Commissioner asserts on appeal, without citation to the record, that all hearings and decisions as to appellants' individual cases were completed before the hearing on the writ.

Thus, an issue exists as to whether appellants have a clear, present and beneficial right to performance of a duty by the Commissioner. (Code Civ. Proc., §§ 1085, 1086; *Morris v. Harper, supra,* 94 Cal.App.4th at p. 58.)

Appellants fail to show any reversible error in the trial court's denial of the request for a writ of mandate or declaratory relief to require the Commissioner to comply with the statutory time requirements. Nor do

---

[24] The Commissioner says inadequate resources leave her with no present ability to comply with a court order to obey the statutory time limits. This is not a reason to deny a court order.

appellants show they are entitled to such a remedy for the benefit of persons other than themselves.[25] Appellants merely assert they were entitled to a writ imposing on the Commissioner the burden to devise a manner to come into compliance with the time requirements.

Later in their brief, appellants argue a writ of mandate will lie even if the petitioner's personal interests do not meet all writ requirements, where the question is one of a public right. (*Green v. Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256].) However, appellants' focus in this part of their brief is on the precedent decision, regarding which we have already ruled in appellants' favor.

In any event, given our conclusion in this appeal that the Commissioner's application of a purported precedent decision to these claims was invalid (as we explain, *post*), requiring reversal of the judgment, appellants will have an opportunity to revisit the matter of untimely processing if it becomes an issue following remand.

Appellants argue that, as a result of the untimely processing, they irretrievably lost the use of the wages due them. However, in the posture of this case, we do not know whether any wages were due them. The trial court said there was insufficient information to fashion an order, plus the remedy for the individual petitioners was a section 98.2 appeal to the superior court for review of their ODA's. No section 98.2 review was at issue in this lawsuit.[26] Appellants argue section 98.2 review would not provide a complete remedy. It could, however, provide the individual relief sought by appellants.

We conclude appellants fail to show grounds for reversal of the judgment with respect to the trial court's denial of writ/declaratory relief for untimely processing of claims. We express no view as to whether untimely processing may become an issue in any subsequent litigation between these parties.

As indicated, however, reversal of the judgment is required because the designation of the precedent decision was invalid. Our conclusion that the designation of the *Hartwig, supra,* No. 12-56901RB, decision as a precedent decision was invalid obviously does not affect the validity of the *Hartwig, supra,* No. 12-56901RB, decision as applied to the *Hartwig* case—a matter which is not before us. We merely hold invalid the purported designation of that decision as a precedent decision binding on other cases.

---

[25] Amici curiae say they represent many workers, but amici curiae are not parties.

[26] Section 98.2, subdivision (d), says if no notice of appeal of the ODA is filed, the ODA shall, in the absence of fraud, be deemed the final order. The Commissioner does not contend section 98.2 barred appellants from participating in this suit.

## DISPOSITION

The judgment is (1) affirmed as to denial of relief for untimely processing and (2) reversed as to denial of relief regarding the precedent decision. The case is remanded to the trial court to fashion writ and/or declaratory relief consistent with this opinion. Appellants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276(a)(3), (4).)

Hull, J., and Robie, J., concurred.